SANCHEZ v LAGOUDAKIS

Docket Nos. 89528, 89532. Argued December 4, 1991 (Calendar No. 5).
    Decided August 4, 1992.

Dorene Sanchez brought an action in the Branch Circuit Court
    against her employer, Kostas Lagoudakis, doing business as
    Paradise Family Restaurant, claiming that his refusal to allow
    her to work at the restaurant until she secured medical evi-
    dence that she did not suffer from acquired immunodeficiency
    syndrome, violated the Handicappers' Civil Rights Act. The
    court, Michael H. Cherry, J., granted summary disposition for
    the defendant, finding that because Sanchez eventually was
    shown not to have AIDS, she failed to state a claim under the
    act, but conditioned dismissal on payment by Lagoudakis of lost
    wages, costs, and attorney fees. The Court of Appeals, GILLIS,
    P.J., and McDONALD and J. W. FITZGERALD, JJ., affirmed in an
    opinion per curiam (Docket No. 115526). Both parties appeal.

    In an opinion by Justice LEVIN, joined by Chief Justice
    CAVANAGH, and Justices BRICKLEY, BOYLE, and MALLETT, the
    Supreme Court held:

    AIDS can be found to be a handicap for purposes of the
    Handicappers' Civil Rights Act. The mere perception of a
    handicap, even if erroneous, is actionable under the act.

    1. MCL 37.1103(b)(i); MSA 3.550(103)(b)(i), in effect at the
    time of the plaintiff's claim, defined "handicap" as a determin-
    able physical or mental characteristic of an individual or a
    history of the characteristic that may result from disease,
    injury, congenital condition of birth, or functional disorder,
    which characteristic is unrelated to the individual's ability to
    perform a particular job or position or is unrelated to the
    individual's qualification for employment or promotion. A per-
    son with AIDS can be found to be handicapped. Because the
    circuit court did not reach either the issue whether AIDS can be
    a determinable physical or mental characteristic resulting from
    disease or the issue of unrelatedness, remand is required for
    further factual development and determination.

    2. Under MCL 37.1202(1)(b); MSA 3.550(202)(1)(b), an em-
    ployer was not permitted to discharge or otherwise discrimi-
    nate against an individual with respect to compensation or the
    terms, conditions, or privileges of employment because of a

handicap unrelated to the individual's ability to perform the duties of a particular job or position. It appears that the act prohibited employers from acting against employees on the basis of a handicap within the statutory definition. The focus of the act was the basis of the employer's conduct, the employer's belief or intent, and not the employee's condition. If an employer acts on a belief that an employee has a handicap, and subsequently discharges or otherwise discriminates against the employee on the basis of that belief, it is inconsequential whether the employee actually has the handicap because the employer has undertaken the kind of discriminatory action prohibited by the act. The Civil Rights Commission consistently has construed the act to protect persons who suffer discrimination motivated by an employer's erroneous perception of a handicap and has extended this construction to explicitly include the perception of AIDS.

Justices RILEY and GRIFFIN concurred in the result only.

Reversed and remanded for further proceedings.

184 Mich App 355; 457 NW2d 373 (1990) reversed.

ACLU Fund of Michigan (by *Mark Brewer* and *Mark Stuart*); (*Paul Denenfeld,* of counsel) for the plaintiff.

*George Platsis* for the defendant.

Amici Curiae:

*Frank J. Kelley,* Attorney General, *Gay Secor Hardy,* Solicitor General, *Robert L. Willis, Jr., Dianne Rubin,* and *Ron D. Robinson,* Assistant Attorneys General, for Michigan Civil Rights Commission and Michigan Department of Civil Rights.

*David Piontkowsky* for Michigan Organization for Human Rights.

LEVIN, J. Defendant Kostas Lagoudakis operates the Paradise Family Restaurant in Coldwater. In November, 1987, he hired plaintiff Dorene Sanchez as a waitress. Shortly thereafter, a rumor circulated that Sanchez had acquired immunodeficiency

syndrome, AIDS. It appears that some patrons refused to allow Sanchez to wait on them.

On December 8, 1987, Lagoudakis informed Sanchez that she could not continue to work at the restaurant until she secured medical evidence that she was disease free.[1] Sanchez obtained a blood test at the county health department and learned that the result was negative about a month later. She maintains, however, that she was so humiliated by the experience that she had to leave Coldwater and return to Marshall.[2]

Sanchez commenced this action against her employer, Lagoudakis,[3] claiming that his actions violated the Handicappers' Civil Rights Act.[4] After some discovery, both parties filed motions for summary disposition.

The circuit court granted Lagoudakis' motion, finding that because the complaint alleged, and discovery tended to show, that Sanchez did not in fact have AIDS, she did not have a handicap as defined by the act, and thus had failed to state a claim under the act. The court conditioned the dismissal of the case, however, on Lagoudakis' paying lost wages for the time between Sanchez' suspension and her receipt of the negative test results. The court assessed some costs and attorney fees against Lagoudakis.[5] The Court of Appeals

---

[1] Sanchez claims that Lagoudakis communicated the AIDS allegation to other employees and customers of the restaurant.

[2] Lagoudakis version is that Sanchez was welcome to return to work, but that she simply chose to return to Marshall to live with her husband.

[3] Sanchez named a coemployee, allegedly responsible for the rumor, as an additional defendant.

[4] MCL 37.1101 et seq.; MSA 3.550(101) et seq.

[5] The order of dismissal entered on February 22, 1989, awarded Sanchez lost wages and tips of $491.25, costs of $316.24, and attorney fees of $500. Our disposition makes it unnecessary to consider the propriety of this award.

affirmed.[6] We reverse, and remand for further proceedings.

## I

The circuit judge granted summary disposition because he was of the opinion that the act cannot support a claim of discriminatory treatment based on an employer's *erroneous perception* that an employee has AIDS.

There are two parts to the question presented: (1) can AIDS be found to be a handicap under the act?; (2) is the mere perception of a handicap, even if erroneous, actionable under the act?

## A

Although this is the first time this Court has confronted the issue whether AIDS can be a handicap under the act, courts in California, New York and New Jersey, have considered the question in construing discrimination statutes. These courts have all concluded that AIDS is a handicap for civil rights purposes.[7]

The United States Courts of Appeals for the

[6] 184 Mich App 355; 457 NW2d 373 (1990). This Court then granted both parties' applications for leave to appeal, 437 Mich 1035 (1991).

[7] *Raytheon Co v California Fair Employment & Housing Comm,* 212 Cal App 3d 1242; 261 Cal Rptr 197 (1989) (AIDS was a physical handicap under the California Fair Employment and Housing Act [Cal Gov Code 12900 *et seq.*]—the act does not offer a restrictive definition of "handicap," but the California Supreme Court has defined the term to include a "physical" condition that either presently or eventually impairs a person's ability to do his job, see *American Nat'l Ins Co v Fair Employment Housing Comm,* 32 Cal 3d 603, 608-610; 186 Cal Rptr 345; 651 P2d 1151 [1982], and Cal Gov Code 12926); *Barton v New York City Comm on Human Rights,* 140 Misc 2d 554; 531 NYS2d 979 (1988) (AIDS patients were physically handicapped within the meaning of § 8-108 of the New York City Administrative Code); *Poff v Caro,* 228 NJ Super 370; 549 A2d 900 (1987) (a person suffering from AIDS clearly has a severe handicap within the meaning of the New Jersey Law Against Discrimination [NJ Stat Ann 10:5-1 *et seq.*]—the statute defines "handicapped" as "suffering from physical

Ninth[8] and Eleventh[9] Circuits, and the United States District Courts for the Eastern District of Pennsylvania,[10] and the Central District of California,[11] have held that AIDS is a handicap under antidiscrimination statutes.

Section 103(b)(i) of the act,[12] in effect at the time of Sanchez' claim,[13] defined "handicap" as "a deter-

disability, infirmity, malformation or disfigurement which is caused by bodily injury, birth defect or illness including epilepsy, and which shall include, but not be limited to, any degree of paralysis, amputation, lack of physical coördination, blindness or visual impediment, deafness or hearing impediment, muteness or speech impediment or physical reliance on a service or guide dog, wheelchair, or other remedial appliance or device, or from any mental, psychological, or developmental disability resulting from anatomical, psychological, physiological or neurological conditions which prevents the normal exercise of any bodily or mental functions or is demonstrable, medically or psychologically, by accepted clinical or laboratory diagnostic techniques," NJ Stat Ann 10:5-5[q]).

[8] *Chalk v United States Dist Court,* 840 F2d 701 (CA 9, 1988) (reversing the denial of a preliminary injunction seeking reinstatement of teacher with AIDS to classroom duties under the federal Rehabilitation Act [29 USC 701 *et seq.*]—the act defines "handicap" as "physical or mental impairment which substantially limits one or more of such person's major life activities, has a record of such an impairment, . . . or is regarded as having such an impairment," 29 USC 706[8][B]).

[9] *Martinez v School Bd of Hillsborough Co,* 861 F2d 1502, 1506 (CA 11, 1988) (AIDS qualifies as a handicap under the federal Rehabilitation Act).

[10] *Cain v Hyatt,* 734 F Supp 671 (ED Pa, 1990) (AIDS is a handicap within the meaning of the Pennsylvania Human Relations Act [43 Pa Stat Ann 951 *et seq.*]—the act defines "handicap" as "a physical or mental impairment which substantially limits one or more major life activities," 16 Pa Code 44.4[4][i], interpreting the act, 43 Pa Stat Ann 955).

[11] *Thomas v Atascadero Unified School Dist,* 662 F Supp 376, 381 (CD Cal, 1986) (a child with AIDS is handicapped under the federal Rehabilitation Act).

[12] MCL 37.1103(b)(i); MSA 3.550(103)(b)(i).

[13] Effective June 25, 1990, this act was amended and the term "handicap" is now defined by MCL 37.1103(e); MSA 3.550(103)(e) to mean:

    1 or more of the following:
    (i) A determinable physical or mental characteristic of an individual, which may result from disease, injury, congenital

minable physical or mental characteristic of an individual or a history of the characteristic which may result from disease, injury, congenital condition of birth, or functional disorder which characteristic . . . is unrelated to the individual's ability to perform the duties of a particular job or position, or is unrelated to the individual's qualifications for employment or promotion."

We are persuaded that a person with AIDS can be found to be handicapped. On remand, the evidence may provide support for a finding that a person with AIDS has a "physical characteristic" because such persons have a severely weakened immune system, an inability to fight disease that persons not so infected can withstand. Further, this characteristic may be "determinable" because it can be identified by blood testing. Finally, this characteristic may "result from disease" because the cause of the breakdown of an AIDS-infected person's immune system is the disease known as AIDS.

In the instant case, the circuit court did not reach either the issue whether AIDS can be a determinable physical or mental characteristic resulting from disease or the issue of "unrelated-

condition of birth, or functional disorder, if the characteristic: . . . substantially limits 1 or more of the major life activities of that individual and is unrelated to the individual's ability to perform the duties of a particular job or position or substantially limits 1 or more of the major life activities of that individual and is unrelated to the individual's qualifications for employment or promotion.

\* \* \*

(ii) A history of a determinable physical or mental characteristic described in subparagraph (i).

(iii) *Being regarded as having* a determinable physical or mental characteristic described in subparagraph (i). [Emphasis added.]

ness," having concluded that the act precluded claims based on the perception of handicap.[14]

### B

Having determined that AIDS can be found to be a handicap under the act, we turn to the question whether the mere perception of a handicap, even if erroneous, is actionable under the act.

Section 202(1)(b) of the act[15] provided that an employer shall not "[d]ischarge or otherwise discriminate against an individual with respect to compensation or the terms, conditions, or privileges of employment, *because of a handicap* that is unrelated to the individual's ability to perform the duties of a particular job or position." (Emphasis added.)

It appears from this wording that the act prohibited employers from acting against employees on the basis of a handicap within the statutory definition. The focus of the act was the basis of the employer's conduct—the employer's belief or intent—and not the employee's condition. If the employer acts on a belief that the employee has a handicap, and subsequently discharges or otherwise discriminates against the employee on the basis of that belief, it is inconsequential whether the employee actually has the handicap because, in either hypothesis, the employer has undertaken the kind of discriminatory action that the act prohibits.[16]

---

[14] This opinion should not be read as addressing whether, on these facts, AIDS is unrelated to Sanchez' job as a waitress.

[15] MCL 37.1202(1)(b); MSA 3.550(202)(1)(b).

[16] The purpose of the act is to prohibit employers from discriminating on the basis of handicap. It would not be consistent with that purpose to relieve employers who so discriminate of liability if, although they acted in a prohibited discriminatory manner, it later turns out that their belief was in fact erroneous. The key as far as the

The Civil Rights Commission has consistently construed the act to protect persons who suffer discrimination motivated by an employer's erroneous perception of a handicap.[17] The commission recently extended this construction to explicitly include the perception of AIDS.[18]

The Court of Appeals has concluded that the act proscribes discrimination motivated by an employer's erroneous perception of a handicap.[19]

Courts in other jurisdictions with discrimination laws similar to the act have consistently construed their statutes to protect persons perceived to be handicapped. The United States Supreme Court,[20] as well as the United States Court of Appeals for

act is concerned is that the employer acted on the belief of a handicap.

[17] See, e.g., *Dep't of Civil Rights ex rel Lanphar v A & C Carriers,* Mich Civ Rts Comm Dec No. 36140-E1 (December 18, 1979) ("[e]ven if claimant did not, in fact, have a spondylolysis [a back condition], respondent failed or refused to hire claimant because of respondent's perception that he had such a condition, and such failure or refusal to hire based upon a perception of a handicap is a violation of [the HCRA]"). See also *Dep't of Civil Rights ex rel Roznowski v Bay City Fire Dep't,* Mich Civ Rts Comm Dec No. 71346-E1 (December 14, 1987).

[18] On August 25, 1986, the Civil Rights Commission issued a policy statement providing the following construction of the act:

The [Department of Civil Rights] will accept and process complaints from persons who believe they have been discriminated against in employment, housing, public accommodations, public service, and education because of AIDS or a related condition or the *perception of AIDS.* [Emphasis added.]

[19] See *Dep't of Civil Rights ex rel Lanphar v A & C Carriers,* 157 Mich App 534, 537; 403 NW2d 586 (1987) (*per curiam*) (" '[A]n individual claiming protection under the act is not required to allege and prove himself or herself to be, in fact, handicapped in order to be eligible for the relief provided by the act. It is only necessary for a claimant to show that an employer, believing or suspecting such claimant to be handicapped, committed one of the employment practices prohibited by the act' ").

See also *Bay City Fire Dep't v Dep't of Civil Rights ex rel Roznowski,* 182 Mich App 145; 451 NW2d 533 (1989) (*per curiam*) (REILLY, J., concurring).

[20] *Southeastern Community College v Davis,* 442 US 397, 405-406, n 6;

the Fifth Circuit[21] and the United States District Courts for the Eastern District of Pennsylvania[22] and the District of Hawaii,[23] have construed the federal Rehabilitation Act[24] to include employers' perceptions of handicap, even in instances where the employee in fact had no handicap.[25]

The Supreme Courts for the States of Washington,[26]

99 S Ct 2361; 60 L Ed 2d 980 (1979) ("A person who has a record of, or is regarded as having, an impairment may at present have no actual incapacity at all. Such a person would be exactly the kind of individual who could be 'otherwise qualified' to participate in covered programs [under the federal Rehabilitation Act]").

See also *School Bd of Nassau Co v Arline,* 480 US 273; 107 S Ct 1123; 94 L Ed 2d 307 (1987).

[21] *Carter v Orleans Parish Public Schools,* 725 F2d 261, 263 (CA 5, 1984) ("Unimpaired persons regarded as having an impairment enjoy statutory protection [under the federal Rehabilitation Act] because the erroneous denial of admission into regular classes is one of the abuses Congress sought specifically to correct").

[22] *Local 1812 v United States Dep't of State,* 662 F Supp 50, 54 (D DC, 1987) ("Persons who carry HIV may be deemed handicapped [under the federal Rehabilitation Act] . . . if they are perceived to be handicapped").

[23] *E E Black, Ltd v Marshall,* 497 F Supp 1088, 1098 (D Hawaii, 1980) (recognizing that the provision of the federal Rehabilitation Act and regulations promulgated pursuant thereto define "handicapped individual" to include a person who is merely regarded as having such an impairment).

[24] 29 USC 701 *et seq.;* USC 706(8)(B), 793, and 794.

[25] See also cases cited in 3 Sullivan, Zimmer & Richards, Employment Discrimination, § 25.2.3, pp 11-13.

Because the recently enacted Americans With Disabilities Act defines "disability" similarly to the definition of "handicap" under the federal Rehabilitation Act, it appears that discrimination based on an employer's perception of disability, even if the employee in fact has no disability, is actionable under this newer law as well.

[26] *Reese v Sears, Roebuck & Co,* 107 Wash 2d 563, 573; 731 P2d 497 (1987) ("In fact, the employee need not even be handicapped to bring an action under [the Washington State Law Against Discrimination]" —the statute makes it "an unfair practice for any employer . . . [t]o discharge or bar any person from employment because of . . . the presence of any sensory, mental, or physical handicap," Wash Rev Code Ann 49.60.180), citing *Barnes v Washington Natural Gas Co,* 22 Wash App 576; 591 P2d 461 (1979) (an employee could maintain an action against his employer under the Washington State Law Against Discrimination on the basis of the employer's erroneous perception that the plaintiff was handicapped).

The *Barnes* court elaborated on its reasoning:

It would defeat legislative purpose to limit the handicap

Wisconsin[27] and Utah,[28] the Connecticut Human
Rights Commission,[29] the United States District
Court for the Southern District of Florida[30] and the

> provisions of the law against discrimination to those who are
> actually afflicted with a handicap, such as epilepsy, and exclude
> from its provision those perceived as having such a condition.
> Prejudice in the sense of a judgment or opinion formed before
> the facts are known is the fountainhead of discrimination
> engulfing medical disabilities which prove on examination to be
> unrelated to job performance or to be nonexistent. The intent
> of the law is to protect workers against such prejudgment based
> upon insufficient information. The law's application, therefore,
> should not be limited to those who actually have handicaps,
> excluding those who are discriminated against in the same way
> because they are only thought to have handicaps. . . . Public
> policy, expressed by the Act to eliminate and prevent discrimi-
> nation in employment requires protecting from discriminatory
> practices both those perceived to be handicapped as well as
> those who are handicapped. [*Id.,* pp 582-583.]

[27] *Dairy Equipment Co v Dep't of Industry, Labor & Human Rela-
tions,* 95 Wis 2d 319, 330; 290 NW2d 330 (1980) ("It would be both
ironic and insidious if the legislative intent in providing the protec-
tion of the [Wisconsin] Fair Employment Act [Wis Stat Ann 111.32(8)]
were afforded to persons who actually have a handicap . . . but the
same protection is denied to those whom employers *perceive* as being
handicapped" [emphasis in original]—although the act does not define
"handicap," the Wisconsin Supreme Court has defined the term to
mean " 'a disadvantage that makes achievement unusually difficult;
esp.: a physical disability that limits the capacity to work,' " *Chicago,
M, St P & P R Co v Dep't of Industry, Labor & Human Relations,* 62
Wis 2d 392, 398; 215 NW2d 443 [1974]).

[28] *Salt Lake City Corp v Confer,* 674 P2d 632 (Utah, 1983) (perceived
impairment could violate the Utah Anti-Discrimination Act [Utah
Code Ann 34-35-1 *et seq.*]—the act defines "handicap" as "a physical
or mental impairment which substantially limits one or more of a
person's major life activities," Utah Code Ann 34-35-2[9]).

[29] *CHRC v Respondent,* Connecticut Human Rights Comm, AIDS
Policy & Law, October 18, 1989, Case No. 86-10215 (discrimination
due to perception of AIDS violates the Connecticut Fair Employment
Practices Law).

[30] *Kelley v Bechtel Power Corp,* 633 F Supp 927, 931, 932-933 (SD
Fla, 1986) (a person who is perceived to be handicapped is covered
under the Florida Human Rights Act [Fla Stat Ann 760.01 *et seq.*]—
although the act does not define "handicap," the definition adopted by
the court is " '[a] person with a handicap does not enjoy, in some
measure, the full and normal use of his sensory, mental, or physical
faculties' "), *id.,* p 931.

New Jersey Superior Court,[31] have all concluded that handicap discrimination statutes · prohibit discrimination based on mere perception of handicap.[32]

The Legislature, in 1990, amended the definition of "handicap" to include "[b]eing regarded as having" a handicap.[33] Clearly, under the current version, when the act, in describing prohibited behavior, speaks of discrimination by an employer against an individual because of a handicap, this includes an individual who, while not handicapped, is regarded as having a handicap.

II

Because AIDS can be found to be a handicap under the Handicappers' Civil Rights Act, and because the act prohibits discriminatory treatment, even when based on erroneous perception, we reverse the decision of the Court of Appeals and remand this case to the circuit court for further proceedings.

On remand the circuit court shall determine whether the condition Sanchez was perceived to have was a determinable physical characteristic resulting from disease unrelated to her ability to

[31] *Rogers v Campbell Foundry Co,* 185 NJ Super 109, 112-113; 447 A2d 589 (1982), cert den 91 NJ 529 (1982) (perception of a handicap actionable under the New Jersey Law Against Discrimination [NJ Stat Ann 10:5-1 *et seq.*]).

See also *Poff v Caro,* n 7 *supra,* p 378 ("Reasonably interpreted, the [New Jersey] Law Against Discrimination protects persons who are discriminated against because they have AIDS and persons who are discriminated against because they are perceived to have AIDS or be potential victims of AIDS"), citing *Andersen v Exxon,* 89 NJ 483, 495, n 2; 446 A2d 486 (1982).

[32] Cf. *Brock v Richardson,* 812 F2d 121, 123-125 (CA 3, 1987) (an employer's retaliation against an employee because of the employer's mistaken belief that employee had invoked provisions of the federal Fair Labor Standards Act [29 USC 201 *et seq.*] was held actionable).

[33] See n 13.

perform the duties of her job or her qualifications for employment or promotion.[34] Both of these questions are for further factual development and determination. No record is presented on which we might express an opinion.

Reversed and remanded to the circuit court.

CAVANAGH, C.J., and BRICKLEY, BOYLE, and MALLETT, JJ., concurred with LEVIN, J.

RILEY and GRIFFIN, JJ., concurred in the result only.

[34] The 1990 amendment now defines "[u]nrelated to the individual's ability" to mean that "with or without accommodation, an individual's handicap does not prevent the individual from . . . performing the duties of a particular job or position." MCL 37.1103(l); MSA 3.550(103)(l).