634 So.2d 981 (1994)
Thomas R. TURNER, Plaintiff-Appellee,
v.
CITY OF MONROE, Defendant-Appellant.
No. 25554-CA.
Court of Appeal of Louisiana, Second Circuit.
March 30, 1994.
*982 Charles H. Hamaker, City Atty., Thomas V. Gardner, Jr., Asst. City Atty., for defendant-appellant.
Fewell, Rhymes & Lucas by J. Michael Rhymes, Monroe, for plaintiff-appellee.
Before SEXTON, VICTORY and STEWART, JJ.
STEWART, Judge.
The issue before the court is the applicability of the Louisiana Civil Rights Act for Handicapped Persons, LSA-R.S. 46:2251, et seq., to the case of Thomas Turner, a signal technician, who was terminated by the City of Monroe. The trial court granted relief to Turner and the City appeals. For the following reasons, we affirm.

BACKGROUND
Thomas Turner was employed by the City of Monroe ("City") as a signal technician until May 1991. On January 2, 1991, Turner underwent surgery to repair a degenerative lumbar disc. On or about January 31, 1991, Turner attempted to return to work, but the *983 City refused to allow him to return because of his back condition. Eventually, the City decided to terminate Turner's employment.
On April 24, 1991, the Honorable Robert E. Powell, Mayor of the City of Monroe, conducted a review hearing of the decision to terminate Turner. Two days later, Mayor Powell upheld the decision of the City terminating Turner's employment. He was officially terminated from his job on May 18, 1991.
On June 14, 1991, Turner filed suit in district court against the City seeking reinstatement, compensatory damages, and attorney fees for violating the Civil Rights Act for Handicapped Persons and for violating his right to due process during the administrative review hearing.
Trial on the merits was held on October 14-15, 1991. On January 15, 1993, the trial court rendered a judgment against the City for $30,000 in compensatory damages and $8,814.70 in costs and attorney fees. The trial court also ordered the City to reinstate Turner with no loss of seniority. In its written reasons for judgment, the trial court found that the City had violated the Civil Rights Act for Handicapped Persons because it had wrongly perceived that Turner would not be able to perform the duties of a signal technician. The City appeals the judgment of the court.

DISCUSSION

The Civil Rights Act for Handicapped Persons
The City contends that the trial court incorrectly applied the Civil Rights Act for Handicapped Persons ("Handicapped Act"), LSA-R.S. 46:2251-:2256. LSA-R.S. 46:2254(C)(2) of the Handicapped Act states that an employer shall not:
Discharge or otherwise discriminate against an otherwise qualified individual with respect to compensation or the terms, conditions, or privileges of employment, on the basis of a handicap when it is unrelated to the individual's ability to perform the duties of a particular job or position.
Louisiana Revised Statute 46:2253(1) defines a "handicapped person" as "any person who has an impairment which substantially limits one or more life activities or (a) has a record of such an impairment or (b) is regarded as having such an impairment." LSA-R.S. 46:2253(2) defines an impairment as "retardation; any physical or physiological disorder or condition, or prior mental disorder or condition...." Major life activities are defined as caring for one's self, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working. An otherwise qualified handicapped person is "a handicapped person who, with reasonable accommodation can perform the essential functions of the job in question." LSA-R.S. 46:2253(3). The policy behind the Civil Rights Act for Handicapped Persons is to afford to every individual in the state,
an equal opportunity to enjoy a full and productive life and that the failure to provide such equal opportunity, whether because of discrimination, prejudice or intolerance not only threatens the rights and proper privileges of its inhabitants but menaces the institutions, the foundations of a free democratic state, and threatens the peace, order, health, safety, and general welfare of the state and its inhabitants.
The opportunity to obtain employment, education, housing, and other real estate and full and equal utilization of public services and programs without discrimination on the basis of a handicap is a civil right.

Coverage Under the Handicapped Act
The City argues that Turner was not a member of the protected class of "handicapped persons" as defined by the Handicapped Act, because he is not actually handicapped. Turner counters by arguing that he is a member of the protected class because the City "perceived" him as having a handicap. This issue is res nova in Louisiana. Cf. Kraemer v. Santa Fe Offshore Construction Co., 579 So.2d 488 (La.App. 4th Cir.1991) (assuming that the Handicapped Act was applicable to the plaintiff); Casse v. Louisiana General Services Inc., 531 So.2d 554 (La. App. 5th Cir.1988), writ denied, 533 So.2d 375 (La.1988) (assuming that the Handicapped Act did not apply); Lege v. N.F. *984 McCall Crews, Inc., 625 So.2d 185, 188 (La. App. 3d Cir.1993) (deciding whether correct jury instructions on the definition of handicapped were given).
The Rehabilitation Act of 1978, 29 U.S.C. § 701, et seq., is a federal law which forbids discrimination against handicapped persons. The definition for handicapped person in the Handicapped Act mirrors the definition for handicapped person in the federal Rehabilitation Act of 1978. See 29 U.S.C. § 706(8)(B) (defining an "individual with a disability" as any individual who (i) has a physical or mental impairment which substantially limits one or more of such person's major life activities, (ii) has a record of such an impairment, or (iii) is regarded as having such an impairment). We examine the definition that federal law has given for a handicapped person for any guidance that it may provide for us.
In Cook v. State of R.I., Department of MHRH, 10 F.3d 17 (1st Cir.1993), a woman sued a subdivision of the State of Rhode Island under the Rehabilitation Act of 1978 when it denied her a job as an institutional attendant because of her obesity. A medical examination conducted on the plaintiff found, that despite her weight, she was not physically impinged from doing the job. The plaintiff's case was presented on a perceived disability theory, positing that she was fully capable of doing the job although the employer regarded her as physically impaired. The federal court of appeals sustained the cause of action because the Rehabilitation Act's protection encompasses not only those persons who are in fact disabled, but also those persons who have been the brunt of discrimination because prospective employers view them as disabled. Id. at 22-23. This interpretation of the Rehabilitation Act of 1978 has also been echoed in other federal court cases. See, e.g., Taylor v. U.S. Postal Services, 946 F.2d 1214, 1216 (6th Cir.1991); Forrisi v. Bowen, 794 F.2d 931, 933 (4th Cir.1986); E.E. Black, Ltd. v. Marshall, 497 F.Supp. 1088, 1097 (D.Haw.1980).
We have found examples in other states which also allow recovery if the employer discriminates against an employee because of a perceived handicap. These states have statutory definitions of handicap similar to the Handicapped Act and the Rehabilitation Act of 1978. In Hodgdon v. Mt. Mansfield Company, Inc., 624 A.2d 1122 (Vt.1992), an employer fired a female employee because she would not wear dentures as a condition of employment as a chambermaid. The Vermont Supreme Court found that the plaintiff was handicapped, because "the employer regarded the plaintiff as unfit to be seen by customers" and "this is to regard plaintiff as substantially limited in her ability to work." Id. at 1130. The Vermont Supreme Court relied heavily upon the federal definition of handicapped in making its decision.
In Winnett v. City of Portland, 118 Or. App. 437, 847 P.2d 902 (1993), a female fire fighter sued the City of Portland, Oregon when it discharged her because the city officials believed that she was physically unable to perform the job of a fire fighter. The trial court found in her favor. On appeal, the Oregon Court of Appeal held that the trial court could reasonably believe that the City of Portland regarded her as having a physical impairment and thus she was entitled to recover under the state statute barring discrimination against the handicapped. Id. at 907.
In Sanchez v. Lagoudakis, 440 Mich. 496, 486 N.W.2d 657 (1992), Sanchez was working for the defendant as a waitress. A rumor started to circulate that she had AIDS. The restaurant refused to allow her to continue working until she proved that she did not have AIDS. She underwent a blood test that showed that she did not have AIDS. Humiliated because she was made to take the test in her small town environment, Sanchez quit her job. She filed suit against the restaurant arguing that she was discriminated against because the restaurant perceived that she had AIDS. The trial court and appellate court dismissed the complaint on the grounds that the mere perception that a person has AIDS was not actionable under Michigan's law prohibiting discrimination against the handicapped. The Michigan Supreme Court reversed the lower courts stating that the perception that a person has AIDS constituted a handicap. Id. 486 N.W.2d at 660. The case was remanded to determine whether the plaintiff could prove that the restaurant discriminated *985 against her because of a perceived handicap. Id. 486 N.W.2d at 662.
All of these state courts have found that, if an employer discriminated against an employee because the employer perceived or believed the employee to be handicapped, then the employer could be found liable for its action under their handicap statute. We recognize that some state jurisdictions allow recovery under their handicap anti-discrimination statutes only upon proof of an actual handicap. However, the decisions of these state courts have been based on statutes worded differently from the Louisiana statute. Cf. Chevron Corp. v. Redmon, 745 S.W.2d 314, 316 (Tx.1987) (holding that the plaintiff had to have a handicap to be protected under the Texas law which bars discrimination against the handicapped).
Our research reveals that those states whose handicapped statutes are similar to Louisiana's handicapped statute and to the federal Rehabilitation Act of 1978 allow plaintiffs to recover if they prove that their employer discriminated against them based on a perceived handicap. We find persuasive the interpretation of similar statutory language by other jurisdictions. Given the plain wording of the Louisiana statute, the legislature has decreed that a person who "is regarded as having such an impairment" is a handicapped person. We therefore hold that a plaintiff in Louisiana who proves that he or she was discriminated against because of a perceived handicap has proven prima facie that the employer has violated the Handicapped Act. Once the plaintiff has established a prima facie case of discrimination, it is incumbent on the employer to prove that even with reasonable accommodation, the employee cannot perform the essential duties of the job. Kraemer v. Santa Fe Offshore Construction Co., 579 So.2d 488 (La.App. 4th Cir.1991); see also, Prewitt v. U.S. Postal Service, 662 F.2d 292, 305-07 (5th Cir.1981) (example of a case with the same holding under the Rehabilitation Act of 1978).

Scope of Appellate Review
The trial court's finding of fact will not be disturbed absent manifest error or unless it is clearly wrong. Stobart v. State through DOTD, 617 So.2d 880, 882 (La.1993). The issue to be resolved by a reviewing court is not whether the trier of fact was right or wrong, but whether the factfinder's conclusion was a reasonable one. Stobart, supra.

Application of the Handicapped Act
The City contends that the record does not support a finding that it regarded Turner as handicapped. Turner, age 41, worked in the City of Monroe's civil engineering services department as a signal technician for eight years. As a signal technician, Turner was responsible for the repair and maintenance of traffic signals and traffic signs. He was regularly on call to make emergency repairs to any malfunctioning traffic lights or downed traffic signs as the needs arose. At times, he was required to dig holes for traffic signs with a forty-five pound post driver, lift sixty-pound buckets of paint, and other heavy objects. How frequently he needed to lift these heavy objects and whether he had to do these tasks unaided was disputed at trial.
On January 2, 1991, Turner underwent surgery to repair a disc that was causing chronic back pain. Before the surgery, Turner had limited forward flexion and positive straight leg raising. After the surgery, Dr. Craig Clark, his treating physician, found that Turner had made a remarkable recovery. He found that Turner was walking freely with full mobility in his back and was able to do deep knee bends without pain. Dr. Clark, who was familiar with Turner's job description, sent a letter to the City saying that Turner was fully capable of performing his duties as a signal technician. The only advice Dr. Clark gave Turner after he was released for work was to use common sense in undertaking his pre-surgery employment and activities.
The City was aware of Dr. Clark's recommendation, but still refused to allow Turner to return to work. At trial, Murdock Snelling, who holds general supervisor responsibility over all of the City's engineering services departments, stated that he feared that Turner might re-injure his back if he returned to work. He testified that his fear *986 was based on his prior experience with an employee who had back problems. He also stated that he wanted someone working for him who had no physical defects. Edward Cheek, who was head of the traffic engineering section in which Turner worked, testified that he did not want to hire anyone who had back surgery, irrespective of the success of the surgery. He also stated that his belief was based on his experience with an employee who had also had back surgery, although he could not recall the type of surgery the employee had undergone. At the review hearing, Mayor Powell found that Turner's back problems would cause him to be a danger to himself and to the public.
Dr. Faheam Cannon, a neurologist, examined Turner at the City's request. He found some congenital anomalies in his back, but he also found that Turner was not experiencing any symptoms. After the examination, Dr. Cannon released Turner to return to work, albeit with a recommendation that he sign a waiver against future back problems. Snelling generated a new job description of signal technician. This new job description emphasized the amount of weight that Turner might have to lift. Snelling then met with Dr. Cannon to discuss the new job description. Dr. Cannon then wrote a letter in which he said that someone who had had surgery on his back had a significantly greater chance of re-injuring it than someone who had never had surgery on his back. When Snelling was asked why a new job description had been generated, Cheek replied that he thought Dr. Cannon really did not understand the nature of the job.
At trial, Dr. Clark testified, through deposition, that Turner was fully capable of performing the duties of a signal technician. He also testified that Turner had a very low chance of re-injuring his back. Turner himself testified that he has felt good since he had the surgery. Dr. Dianne Herbst, an expert in vocational rehabilitation, testified that after reviewing Turner's medical records, the signal technician job description, and the depositions of Snelling and Cheeks, she believed the City perceived that Turner was handicapped even though he was fully capable of executing the job of a signal technician.
Based on the testimony of Snelling, Powell, Cheek, Mayor Powell, and Dr. Herbst, the trial court found that the City regarded Turner as handicapped. The trial court also found that Turner did not have any physical impairment that would limit his ability to work, nor did any accommodation need to be made for him to perform the essential duties of a signal technician. See LSA-R.S. 46:2253(3). The City apparently believed that Turner posed a continuing workers' compensation risk to it should his employment be maintained. The trial court was not persuaded that such a concern validated the City's termination of Turner in view of the Handicapped Act's purpose and language. We find that there is ample evidence in the record to support the findings of the trial court.
The City argues that the trial court erred in holding it liable under the Handicapped Act because Turner only adduced evidence that the City discriminated against him, but did not adduce evidence about other employment opportunities. In Cook v. State of R.I., Department of MHRH, supra, the defendant similarly argued that a jury could not have found that it had violated the Rehabilitation Act of 1978, because the plaintiff only offered evidence concerning this one particular job. The court rejected this argument thusly:
Appellant urges that, in order to draw such a conclusion, the jury would have had to engage in rank conjecture because plaintiff applied for, and was rejected from, only one job. In effect, appellant's argument on this point reduces to the notion that meeting the statutory test requires, as a preliminary matter, that an individual unsuccessfully seek a myriad of jobs. We cannot accept that notion for several reasons. First, such a requirement is contrary to the plain reading of the statute and regulations. Under the "regarded as" prong of section 504, a plaintiff can make out a cognizable perceived disability claim by demonstrating that she was treated as if she had an impairment that substantially limits a major life activity. See 45 C.F.R. *987 § 84.3(j)(2)(iv)(C). The Rehabilitation Act simply does not condition such claims on either the quantum of a plaintiff's application efforts or on her prospects of finding other employment.
Similarly, in this case, we reject the City's argument that Turner proffered the wrong type or an insufficiency of evidence at trial.
The City also argues that the trial court erred in finding that Turner was an "otherwise qualified individual." See LSA-R.S. 46:2254(C)(2). As stated above, Dr. Clark, Dr. Herbst, and Turner all testified that Turner's back had healed and that nothing was barring his immediate return to his employment duties for the City. Only Dr. Cannon provided any expert testimony that Turner had a good chance of re-injuring his back. Dr. Clark testified that Turner had a low chance of re-injuring his back. Although the testimony of Dr. Cannon and Dr. Clark conflict, the trial court is allowed to give greater weight to the testimony of the treating physician, Dr. Clark, over the testimony of a doctor whose examination was solely for the purpose of giving expert trial testimony regarding a patient's condition. See Streeter v. Sears, Roebuck and Company, Inc., 533 So.2d 54, 70 (La.App. 3d Cir.1988). We find that the testimony of Dr. Clark, Dr. Herbst, and Turner provided a reasonable basis for the trial court to conclude that Turner was an "otherwise qualified individual" despite the City's perception that he was handicapped.

CONCLUSION
Because there is a reasonable basis to support the finding that the defendant was handicapped and because there is a reasonable basis for the trial court to find that Turner could perform the essential duties of a signal technician, we hold that the trial court was not manifestly erroneous in finding that the City had violated the Handicapped Act. Costs are assessed against the City of Monroe.
AFFIRMED.
VICTORY, J., concurs.