**Joseph B. DRURY, Plaintiff,**

v.

**TNT HOLLAND MOTOR EXPRESS, INC. and Robert Arden & Associates, Inc., jointly and severally, Defendants.**

**No. 1:93–cv–540.**

United States District Court,
W.D. Michigan,
Southern Division.

July 8, 1994.

---

Michael L. Pitt, Pitt, Dowty & McGehee, P.C., Royal Oak, MI, for plaintiff.

Arthur Read Cone, III, Dean & Fulkerson, P.C., Troy, MI and Gary R. Peterson, Oosterbaan, Cooper, Peterson & Beck, Kalamazoo, MI, for defendants.

## OPINION AND ORDER ON DEFENDANT TNT HOLLAND MOTOR EXPRESS, INC.'S MOTION FOR SUMMARY JUDGMENT

MILES, Senior District Judge.

This action arises out of a brief employment relationship between plaintiff Joseph B. Drury and defendant TNT Holland Motor Express, Inc. ("TNT"). TNT fired Drury after it received an erroneous report, prepared by defendant Robert Arden & Associates, Inc. ("Arden"), that Drury had a drunken driving conviction which he did not disclose in his employment application. TNT has moved for summary judgment. Drury has opposed the motion. For the reasons to follow, the court hereby grants the motion in part and denies it in part.

### FACTS

Plaintiff Joseph B. Drury is an Indiana resident. Defendant TNT is a trucking company engaged in interstate transportation of general commodity freight. The company is headquartered in Holland, Michigan and operates terminal facilities in locations throughout the Midwest, including Indianapolis, Indiana. On or about April 14, 1992, Drury, who at age 53 had extensive experience as a truck driver, applied and was hired to work as a linehaul driver for TNT. Drury left his position as a driver with Thomson Consumer Electronics, a job which he had held for over ten years, in order to go to work for TNT.

The application form which Drury completed and signed in applying to work for TNT contains the following conspicuous language immediately above the signature block:

**APPLICANT MUST READ & SIGN**

**I certify that I have read and understood all of this employment application. It is agreed and understood that the employer or his agents may investigate the applicant's background to ascertain any and all information of concern to applicant's record, whether same is of record or not, and applicant releases employers and other persons named herein from all liability for any damages on account of his furnishing such infor-**

mation. I understand that as an applicant for a position with this company, I may be asked to demonstrate that I am capable of performing tasks which are pertinent to the job.

It is also agreed and understood that under the Fair Credit Reporting Act, Public Law 91–508, I have been told that this investigation may include an investigative Consumer Report, including information regarding my character, general reputation, personal characteristics, and mode of living.

I agree to furnish such additional information and complete such examinations as may be required to complete my employment file.

I also understand that misrepresentation or omission of information or facts may result in my rejection or dismissal.

If hired, I agree to abide by all the rules and policies of the employer.

This certifies that this application was completed by me, and that all entries on it and information in it are true and complete to the best of my knowledge.

Defendant's Exhibit 2. The application form also contained the question, "Have you ever been convicted of a felony?" to which Drury answered, "No." Drury wrote his full name at the outset of the application as "Joseph Bruce Drury," and provided, *inter alia,* his birth date and driver's license number. He signed the application "Joseph Drury."

Sometime before May 11, 1992, while Drury was still a probationary employee,[1] TNT hired defendant Arden to perform a background check on him. A letter which TNT faxed to Arden to commence the background check provided Drury's first and last names (middle name excluded), his address, social security number, date of birth, and employment history. Defendant's Exhibit 3. As part of its investigation into Drury's background, Arden apparently contacted the Indiana State Police to determine whether Drury had a criminal record in the state. The Indiana State Police reported to Arden that a Joseph *Thomas* Drury (not Joseph *Bruce* Drury), coincidentally having the same birth date as plaintiff, had been arrested on November 27, 1985 for operating a motor vehicle while intoxicated, a Class D felony. They also reported that Joseph Thomas Drury had been sentenced to two years at the Westville Correctional Center on December 11, 1985, and that he had been released on probation on November 14, 1986. Defendant's Exhibit 4.

Arden reported to TNT that "the subject" of the investigation had the above-described criminal record. Defendant's Exhibit 5. On May 11, 1992, Terry Nyland, TNT's director of linehaul operations, called Drury and told him that he was being terminated. When Drury asked Nyland why, Nyland merely stated, "We do not discuss these matters." Nyland Dep. at p. 46. However, Drury admits that he thereafter contacted TNT's terminal manager, Ray Bryant, who told him that he had been fired because the company had received a report that he "had been in jail for a period-of-time [sic], and was, in fact, on probation at that time." *Id.* at p. 47. Within days, Drury was able to learn, as a result of his own investigation, that Arden was responsible for providing the erroneous report to TNT. Although Drury obtained a copy of his own correct police record from the Indiana State Police and presented it to TNT, they did not re-hire him for reasons which they will not give but which they allege are unrelated to the background information provided by Arden.

Drury filed this action against TNT and Arden on June 4, 1993 in Allegan County Circuit Court. In Counts I and II of the complaint, Drury asserted claims against Arden for violation of the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681 *et seq.* and negligence, respectively. In Count III of the complaint, Drury asserted a claim against TNT for violation of the FCRA. Finally, in Count IV of the complaint, Drury asserted a claim against TNT for violation of Michigan's Elliott–Larsen Civil Rights Act, M.C.L.

---

1. TNT has alleged, and Drury has not disputed, that TNT's collective bargaining agreement with Teamsters Local 135 provided that linehaul drivers are to be considered probationary, at-will employees for a period of 30 calendar days. If they survive the probationary period, they become "regular" employees.

§ 2205a, on the basis that TNT had allegedly relied on arrest records in deciding to fire him. TNT filed a notice of removal to this court on July 13, 1993, invoking the court's federal question and diversity jurisdiction.

### ANALYSIS

TNT has moved for summary judgment on both Counts III and IV of the complaint. Summary judgment is proper where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c); *Canderm Pharmacal, Ltd. v. Elder Pharmaceuticals, Inc.*, 862 F.2d 597, 601 (6th Cir.1988). In evaluating a motion for summary judgment, the court must determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251–52, 106 S.Ct. 2505, 2511–12, 91 L.Ed.2d 202 (1986). The party moving for summary judgment bears the burden of establishing the non-existence of any genuine issue of material fact and may satisfy this burden by " 'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325, 106 S.Ct. 2548, 2554, 91 L.Ed.2d 265 (1986). While inferences drawn from the underlying facts must be viewed in the light most favorable to the party opposing the motion, "[w]hen the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986). Only factual disputes which may have an effect on the outcome of a lawsuit under the applicable substantive law are "material." *Anderson*, 477 U.S. at 248, 106 S.Ct. at 2510.

### *Fair Credit Reporting Act*

■ In Count III of his complaint, Drury claims that TNT violated § 606(a) of the FCRA, 15 U.S.C. § 1681d(a). This section provides in pertinent part as follows:

(a) A person may not procure or cause to be prepared an investigative consumer report on any consumer unless—

(1) it is clearly and accurately disclosed to the consumer that an investigative consumer report including information as to his character, general reputation, personal characteristics, and mode of living, whichever are applicable, may be made, and such disclosure (A) is made in a writing mailed, or otherwise delivered, to the consumer, not later than three days after the date on which the report was first requested, and (B) includes a statement informing the consumer of his right to request the additional disclosures provided for under subsection (b) of this section[.]

Subsection (b) of § 606 provides as follows:

(b) Any person who procures or causes to be prepared an investigative consumer report on any consumer shall, upon written request made by the consumer within a reasonable time after the receipt by him of the disclosure required by subsection (a)(1) of this section, shall [sic] make a complete and accurate disclosure of the nature and scope of the investigation requested. This disclosure shall be made in a writing mailed, or otherwise delivered, to the consumer not later than five days after the date on which the request for such disclosure was received from the consumer or such report was first requested, whichever is the later.

Yet another section of the FCRA, § 615, 15 U.S.C. § 1681m, provides in pertinent part as follows:

(a) Whenever … employment involving a consumer is denied … either wholly or partly because of information contained in a consumer report from a consumer reporting agency, the user of the consumer report shall so advise the consumer against whom such adverse action has been taken and supply the name and address of the consumer reporting agency making the report.

The regulations issued by the Federal Trade Commission under the FCRA provide that the disclosure made by an employer as required by § 615 "need not be made in writing." 16 C.F.R. Pt. 600, App. § 615(3) (1994).

The parties agree that Arden is a consumer reporting agency for purposes of the FCRA, that TNT is a user of an investigative consumer report for purposes of the statute, and that Arden's report on Drury was an investigative consumer report within the meaning of the statute. Drury has admitted, in his deposition, that he understood, as part of his application process, that TNT would do a background investigation on him. Drury Dep. at pp. 41–42. TNT does not contest that within hours of Drury's termination, Bryant told Drury that he was let go in whole or in part because of Arden's report.

TNT argues that it did not violate § 606 of the FCRA because it informed Drury, via his employment application, that it was going to perform an investigation of his background. This is true, and Drury cannot dispute the clear contents of the application, which he signed on April 16, 1992. He admits he understood this. Therefore, no genuine dispute exists regarding whether TNT complied with § 606(a)(1)(A). The evidence simply does not show that the Arden report was surreptitiously obtained.[2]

Sections 606(a)(1)(B) and 615(a) are another matter, however. Notwithstanding the clear language of these sections—requiring TNT to inform Drury of his right to request additional information about the investigation, to provide Drury with the reason why was terminated, and to supply the name and address of the agency making the report— TNT argues that it did not violate the FCRA because Drury ultimately found out about the erroneous report, discovered who made it, and set about to correct it.

**2.** Drury argues that TNT violated § 606(a)(1)(A) because it should have given him some form of additional notification at the time it actually requested Arden to prepare the report. This argument is not supported by the statutory language. Section 606(a)(1)(A) only requires that the consumer be informed that the report "*may* be made ... not later than three days after the date on

TNT's arguments regarding § 606(a)(1)(B) and § 615 are meritless. TNT, plainly and simply, violated § 606(a)(1)(B) because it did not inform Drury that he had a right to request additional information about the nature and scope of the investigation. TNT also violated § 615(a) because it did not inform Drury, contemporaneously upon notification of his termination, that the background report was the reason why he was being fired and who prepared the report. *See Carroll v. Exxon Co., USA,* 434 F.Supp. 557, 560 (E.D.La.1977) ("The language of 15 U.S.C. § 1681m(a) clearly requires such disclosure contemporaneously upon notification"); *see also* 116 Cong.Rec. 36571 (1970) (statement of Rep. Sullivan), stating that

> The House conferees succeeded in assuring immediate notification to any individual, who is rejected for ... employment because of information in a credit report, of the name and address of the agency which made the report on him. Thus, his right to access to his file is made more meaningful—he will automatically be told where to look for information which may be causing him needless harm. The Senate bill would have required the consumer who had been rejected for ... employment because of adverse information in a credit file to request, in writing, the name and address of the credit reporting bureau in order to check further into the information which may have caused his rejection. It was our feeling that this was a needless technicality which would have resulted, from a practical standpoint, in some, or many, individuals, for timidity or other reasons, failing to exercise their rights to find out where to go in order to have a damaging credit report reevaluated and, if wrong, corrected....

TNT cannot escape liability for its violation of the FCRA because Drury had the intelligence and assertiveness to get to the bottom of what happened.[3]

which the report was first requested[.]" (emphasis supplied). TNT notified Drury that the report was going to be made before it was ever requested, and therefore complied with the section.

**3.** The court notes that TNT essentially gloats that Drury never requested any additional information from it regarding the investigative report

TNT also appears to argue that even though it might have technically violated the FCRA, it should not be held liable because the violation was not "material" in the sense that Drury can show that any additional disclosures would have prevented the termination of his probationary employment. TNT contends that Drury has not demonstrated that its failure to provide the required disclosures was a "proximate cause" of his being fired. However, the statute does not exempt violators from liability for "non-material" violations, where those violations are the cause of damages. *See* 15 U.S.C. § 1681n(1) and (2) (providing for "actual damages sustained by the consumer as a result of the failure" to comply and punitive damages where user "willfully fails to comply with any requirement imposed under this subchapter"); *see also* 15 U.S.C. § 1681*o* (1) (providing for "actual damages sustained by the consumer as a result of the failure" to comply where user "is negligent in failing to comply with any requirement imposed under this subchapter").

In this case, viewing the facts in the light most favorable to Drury, the court cannot conclude that Drury will not be able to show that TNT's violation caused him to lose his job. TNT has admitted that it decided to fire Drury on the basis of Arden's report. Perhaps, had Drury been immediately informed of the reason why he was being fired, he could have persuaded TNT to contact Arden or to otherwise attempt to verify the accuracy of the report before TNT had developed a firm mindset against re-hiring him. Moreover, it cannot be concluded, at least not at this stage, that Drury has not been harmed by TNT's violations. One key purpose behind the FCRA's provisions on personal data reporting was to protect consumers from damage to their reputation:

... [W]ith the trend toward computerization of billings and the establishment of all sorts of computerized data banks, the individual is in great danger of having his life and character reduced to impersonal 'blips' and keypunch holes in a stolid and unthinking machine which can literally ruin his reputation without cause, and make him unemployable or uninsurable, as well as deny him the opportunity to obtain a mortgage to buy a home. We are not nearly as much concerned over the possible mistaken turndown of a consumer for a luxury item as we are over the possible destruction of his good name without his knowledge and without reason.

116 Cong.Rec. at 36570. Drury was fired from his job at TNT based on an admittedly inaccurate background report. He was not told why. After he did discover the reason through his own apparent resourcefulness, he tried to get his job back. He was refused, for unclear reasons. This situation may well be difficult to explain to potential future employers who ask why he lost his job at TNT and why he did not get it back. Under the circumstances, it may well be that Drury can show that he suffered damages as a result of TNT's noncompliance with the FCRA.[4]

*Elliott–Larsen Act*

■ In Count IV of the complaint, Drury claims that TNT violated Michigan's Elliott–Larsen Civil Rights Act by making its decision to fire him based on an arrest record.

M.C.L. § 37.2205a provides in pertinent part as follows:

An employer ... shall not in connection with an application for employment ... request, make, or maintain a record of information regarding an arrest, detention,

---

which his application clearly stated would be obtained. Perhaps he would have requested more information had TNT fulfilled its statutory duty to inform him that he had the right to do so.

4. The court notes that Congress declined to include language in the FCRA which might have prevented what happened to Drury. The legislative history indicates that House conferees sought to add a provision to the Act which would have required consumer reporting agencies to notify an individual of the existence of a file on him the first time a request was made after the effective date of the Act. This would have provided an opportunity for the individual to examine and correct, if necessary, any erroneous information before any damage to him occurred. This provision, however, was not adopted. 116 Cong.Rec. 36572. TNT nonetheless technically violated the requirements which were enacted and imposed on it as a user of a report, and it may be held accountable if Drury can show that the violations caused him damage.

or disposition of a violation of law in which a conviction did not result. . . .

TNT argues that it did not violate § 2205a because it inquired and obtained only information regarding arrests which resulted in a conviction. Drury argues that TNT committed a "gross violation" of the Act because it fired him based on the erroneous perception that he had an arrest record. Drury contends that this is a case of "first impression" under § 2205a. More specifically, he argues that the court should, by analogy, apply decisions of Michigan courts under the Michigan Handicappers' Civil Rights Act, M.C.L. § 37.1202(1)(b), which prohibit an employer from discriminating against an employee based on an erroneous belief that the employee has a handicap. *Sanchez v. Lagoudakis,* 440 Mich. 496, 486 N.W.2d 657, 660 (1992).

Drury's argument ignores the evidence as well as the clear wording of § 2205a. TNT's job application asked only about felony convictions, not arrests, and the only evidence presented shows that it made its decision to fire Drury based on a belief that he had served time in jail and was on probation for drunk driving, i.e., that he had been convicted of the offense. That TNT happened to be wrong does not equal a violation nor does it raise a genuine issue of material fact. Drury's Elliott–Larsen claim is unsupported and meritless.

## CONCLUSION

For the foregoing reasons, the court hereby **GRANTS** TNT's motion for summary judgment insofar as it seeks dismissal of Drury's claim under Michigan's Elliott–Larsen Civil Rights Act. Count IV of the complaint is hereby **DISMISSED.** The court further hereby **DENIES** the motion insofar as it seeks dismissal of Drury's claim under the Fair Credit Reporting Act.

So ordered.