SANCHEZ v LAGOUDAKIS (ON REMAND)

Docket No. 189094. Submitted May 14, 1996, at Grand Rapids. Decided July 9, 1996, at 9:20 A.M. Leave to appeal sought.

Dorene Sanchez brought an action in the Branch Circuit Court against her employer, Kostas Lagoudakis, doing business as Paradise Family Restaurant, claiming that his refusal to allow her to work as a waitress until she secured medical evidence that she did not suffer from acquired immunodeficiency syndrome (AIDS) violated the Handicappers' Civil Rights Act (HCRA), MCL 37.1101 et seq.; MSA 3.550(101) et seq. The court, Michael H. Cherry, J., granted summary disposition for the defendant but ordered him to pay the plaintiff's lost wages, costs, and attorney fees, ruling that because the plaintiff was shown not to have AIDS, she failed to state a claim under the HCRA. The Court of Appeals, GILLIS, P.J., and McDONALD and J. W. FITZGERALD, JJ., affirmed in an opinion per curiam. 184 Mich App 355 (1990). The Supreme Court reversed the judgment of the Court of Appeals and remanded the case to the trial court, holding that AIDS can be found to be a handicap for purposes of the HCRA and that the mere perception of a handicap, even if erroneous, is actionable under the HCRA. The Supreme Court directed the trial court to determine whether the condition the plaintiff was perceived to have was a determinable physical characteristic resulting from disease unrelated to her ability to perform the duties of her job or her qualifications for employment or promotion. On remand, the trial court denied a motion for summary disposition by the defendant, who argued that his actions were authorized by the Public Health Code, MCL 333.1101 et seq.; MSA 14.15(1101) et seq., and granted summary disposition for the plaintiff, to whom it awarded lost wages and tips, costs, and attorney fees. The Court of Appeals dismissed an appeal by the defendant. The Supreme Court, in lieu of granting leave, remanded the case to the Court of Appeals for plenary consideration. 450 Mich 863 (1995).

On remand, the Court of Appeals held:

A suspicion, or confirmed diagnosis, of AIDS is insufficient to authorize a food service employer to take discriminatory action under the Public Health Code against a food service employee where the employee is not suspected of, or has not been diagnosed

as, having an AIDS-related opportunistic disease that can be transmitted through food.

1. Section 202(1)(b) of the HCRA, MCL 37.1202(1)(b); MSA 3.550(202)(1)(b), provides in part that an employer shall not discriminate against an employee because of a handicap that is unrelated to the employee's ability to perform the duties of employment. Section 103(b)(1) of the HCRA, MCL 37.1103(b)(i); MSA 3.550(103)(b)(i), defines "handicap" in part as a determinable physical characteristic that may result from disease and that is unrelated to the ability to perform the duties of a particular job or position, or is unrelated to qualifications for employment or promotion. A person with an immune system that is severely compromised by AIDS has a determinable physical characteristic that results from disease.

2. Section 3-101 of the Food Service Sanitation Manual of the United States Public Health Service, as adopted by the Michigan Department of Public Health in 1981 AACS, R 325.25103(b), and the provisions of 1981 AACS, R 325.25909 authorize the Michigan Department of Public Health, a local health department, or a food service employer to exclude a food service employee from working in a food service establishment when the employee is suspected of having a disease that can be transmitted through food. AIDS, when not accompanied by a disease that is communicable through food, is not transmissible through food. Accordingly, a suspicion, or confirmed diagnosis, of AIDS, by itself, is insufficient to authorize a food service employer to take discriminatory action under the Public Health Code against a food service employee.

3. In this case, the trial court correctly denied summary disposition for the defendant and granted summary disposition for the plaintiff because there was no evidence that the defendant suspected the plaintiff of having an AIDS-related opportunistic disease that is transmissible through food.

4. The trial court erred in combining summary disposition and trial procedures in deciding the parties' motions for summary disposition. The error was harmless, however, because the trial court resolved questions of law, not issues of material fact.

5. The HCRA is not void for vagueness; it provides fair notice of proscribed conduct, does not conflict with the Public Health Code, and provides notice that persons with perceived handicaps are protected under the HCRA.

6. The trial court did not abuse its discretion in awarding attorney fees to the plaintiff, as allowed under the HCRA.

Affirmed.

CIVIL RIGHTS — HANDICAPPERS' CIVIL RIGHTS ACT — AIDS — FOOD SERVICE EMPLOYEES.

A suspicion, or confirmed diagnosis, of acquired immunodeficiency syndrome unaccompanied by an opportunistic disease that is transmissible through food does not provide a food service employer with authority under the Public Health Code to exclude a food service employee from working in a food service establishment; the exclusion of a food service employee from a food service establishment on the basis of such suspicion or diagnosis violates the Handicappers' Civil Rights Act (MCL 37.1101 *et seq.*; MSA 3.550[101] *et seq.*; 1981 AACS, R 325.25103[b], R 325.25909).

*Mark Brewer* and *Mark Stuart* (*Paul Denenfeld,* of Counsel), for the plaintiff.

*George James Platsis,* for the defendant.

ON REMAND

Before: DOCTOROFF, C.J., and NEFF and FITZGERALD, JJ.

FITZGERALD, J. Plaintiff Dorene Sanchez, formerly employed by defendant Kostas Lagoudakis as a waitress in his restaurant, brought suit against her former employer under the Handicappers' Civil Rights Act (HCRA), MCL 37.1101 *et seq.*; MSA 3.550(101) *et seq.*, after defendant informed plaintiff that she could not continue to work until she secured medical evidence that she was disease free. Defendant's action was taken in the face of a rumor that plaintiff had acquired immunodeficiency syndrome (AIDS). The trial court summarily dismissed plaintiff's suit on defendant's motion after determining that because the complaint alleged, and discovery tended to show, plaintiff did not in fact have AIDS, she did not have a handicap as defined by the HCRA and, therefore, had failed to state a claim under the HCRA. We affirmed. *Sanchez v Lagoudakis,* 184 Mich App 355; 457 NW2d 373 (1990). Our Supreme Court reversed, opining that discrimina-

tory action taken by an employer on a mere perception of a handicap, even if erroneous, was actionable under the HCRA. *Sanchez v Lagoudakis*, 440 Mich 496, 502-506; 486 NW2d 657 (1992). The Supreme Court then remanded this case to the trial court for a determination "whether the condition Sanchez was perceived to have was a determinable physical characteristic resulting from disease unrelated to her ability to perform the duties of her job or her qualifications for employment or promotion." *Id.* at 506-507. On remand, defendant moved for summary disposition pursuant to MCR 2.116(C)(8) and (10) on the ground that defendant's actions were authorized by the Michigan Public Health Code (the Code), MCL 333.1101 *et seq.*; MSA 14.15(1101) *et seq.* Plaintiff also moved for summary disposition. The trial court denied defendant's motion, granted plaintiff's motion, and awarded plaintiff lost wages and tips, costs, and attorney fees. Defendant appealed as of right. We dismissed the appeal. Our Supreme Court vacated this Court's order of dismissal and remanded this case to us for plenary consideration. 450 Mich 863 (1995). We now affirm.

I

Defendant argues that he, and not plaintiff, was entitled to summary disposition with regard to plaintiff's HCRA claim because plaintiff did not, and cannot, establish, as a matter of law, that defendant's action of suspending her pending presentation of medical proof that she was free of disease constituted an unlawful discriminatory act under the HCRA. The question presented requires us to determine whether a person with AIDS has a handicap as defined by the HCRA, which, in turn, requires us to explore the rela-

tionship between the HCRA and the Code and the effect this relationship has on a food service employee's ability to perform the duties of a particular job.

A

In reviewing a trial court's decision on a motion for summary disposition brought pursuant to MCR 2.116(C)(10), this Court examines all relevant affidavits, depositions, admissions, and other documentary evidence and construes the evidence in favor of the nonmoving party. The Court then determines whether a genuine issue of material fact exists on which reasonable minds could differ. *Shirilla v Detroit*, 208 Mich App 434, 437; 528 NW2d 763 (1995). We review de novo a trial court's grant or denial of a motion for summary disposition. *West Bloomfield Twp v Karchon*, 209 Mich App 43, 48; 530 NW2d 99 (1995).

Section 202(1)(b) of the HCRA, MCL 37.1202(1)(b); MSA 3.550(202)(1)(b), provides that an employer shall not "[d]ischarge or otherwise discriminate against an individual with respect to compensation or the terms, conditions, or privileges of employment, because of a handicap that is unrelated to the individual's ability to perform the duties of a particular job or position." To establish a prima facie case of discrimination under the HCRA, it must be shown that (1) the plaintiff is "handicapped" as defined in the HCRA, (2) the handicap is unrelated to the plaintiff's ability to perform the duties of a particular job, and (3) the plaintiff has been discriminated against in one of the ways set forth in the statute. *Merillat v Michigan State Univ*, 207 Mich App 240, 244; 523 NW2d 802 (1994).

Section 103(b)(i) of the HCRA, MCL 37.1103(b)(i); MSA 3.550(103)(b)(i), in effect at the time Sanchez filed her claim, defined the term "handicap" as "a determinable physical or mental characteristic of an individual or a history of the characteristic which may result from disease, injury, congenital condition of birth, or functional disorder which characteristic . . . is unrelated to the individual's ability to perform the duties of a particular job or position, or is unrelated to the individual's qualifications for employment or promotion." See also *Sanchez*, 440 Mich 500-501.

We begin our discussion of whether a food service employee with AIDS is handicapped within the meaning of § 103(b)(i) with a recitation of some pertinent rules of statutory construction, from which we take guidance. The primary goal of judicial interpretation of statutes is to ascertain and give effect to the intent of the Legislature. *Farrington v Total Petroleum, Inc*, 442 Mich 201, 212; 501 NW2d 76 (1993). The first criterion in determining intent is the specific language of the statute. *House Speaker v State Administrative Bd*, 441 Mich 547, 567; 495 NW2d 539 (1993). Courts may not speculate about the probable intent of the Legislature beyond the words expressed in the statute. If the plain and ordinary meaning of the language is clear, judicial construction is normally neither necessary nor permitted. *Lorencz v Ford Motor Co*, 439 Mich 370, 376; 483 NW2d 844 (1992). A court may consult dictionary definitions to ascertain the ordinary meaning of a word. *Popma v Auto Club Ins Ass'n*, 446 Mich 460, 470; 521 NW2d 831 (1994). Judicial construction is appropriate only if reasonable minds could differ regarding the meaning of a statute.

*Dep't of Social Services v Brewer*, 180 Mich App 82, 84; 446 NW2d 593 (1989).

The first determination we must make is whether a person with AIDS has a "physical characteristic" within the meaning of the HCRA. We are persuaded that a person with AIDS has such a characteristic.

The word "physical" is defined as "[r]elating or pertaining to the body, as distinguished from the mind or soul or the emotions . . . [m]aterial, substantive, having an objective existence. . . ." Black's Law Dictionary (5th ed), p 1032. The word "characteristic" is defined as "a distinguishing trait, feature, or quality; peculiarity." *Webster's New World Dictionary, Third College Edition*, p 235.

The documentary evidence submitted by the parties established the following pertinent medical facts. A person with AIDS is in the late clinical stages of infection with the human immunodeficiency virus (HIV). The virus attacks white blood cells (T-Lymphocytes) and thereby compromises the host's immune system, leaving the host unable to fight other diseases. Without a functioning immune system, the host becomes vulnerable to infection by bacteria, protozoa, fungi, viruses, and other malignancies, which may cause life-threatening illness, such as pneumonia, meningitis, and cancer. Absent the compromised immune system, the opportunistic diseases would not otherwise gain a foothold in the body.

We conclude that a severely compromised immune system constitutes a physical characteristic within the meaning of § 103(b)(i). The evidence submitted by the parties establishes that this condition represents a distinguishing trait of the body. *Sanchez*, 440 Mich 501.

The next determination we must make is whether a severely compromised immune system is "determinable" within the meaning of § 103(b)(i). We are persuaded that it is.

The word "determinable" is defined as "susceptible of being determined, found out, definitely decided upon, or settled." Black's Law Dictionary (5th ed), p 405.

The documentary evidence provided by the parties establishes that the presence of HIV is identified through serological tests that reveal the presence of HIV antibodies that are produced by the host's body generally within two weeks to three months of the host's exposure to HIV. Additionally, the severity of HIV infection is also identified through serological tests that reveal various abnormalities, including abnormalities in the absolute T-helper cell count. Finally, a person is diagnosed with AIDS when serological, histological, and cultural techniques employed reveal the existence of one of more than a dozen indicator diseases in combination with evidence of HIV infection or the ruling out of other known causes of immunodeficiency.

We conclude that a compromised immune system constitutes a "determinable" characteristic within the meaning of § 103(b)(i). This characteristic is subject to definite and objective identification by serological, histological, and cultural techniques. *Sanchez*, 440 Mich 501.

We must also determine whether a compromised immune system may "result from disease" within the meaning of § 103(b)(i). We conclude that it may so result.

The documentary evidence submitted by the parties indicates that HIV infection causes progressive damage to the immune system and other organic systems, especially the central nervous system, and this progressive damage in turn renders the HIV-infected person, in the late stages of the infection, vulnerable to life-threatening opportunistic diseases. A diagnosis of AIDS is made in the late stages of HIV infection. The time from HIV infection to AIDS diagnosis may range from two months to more than ten years.

We are persuaded that this progression from HIV infection to AIDS diagnosis supports the conclusion that a compromised immune system results from disease. *Sanchez*, 440 Mich 501.

The final determination we must make is whether a severely compromised immune system is related to the individual's abilities to perform the duties of, or to the individual's qualifications for employment as, a waitress in a food service establishment. We look to the Code to assist us in making this determination and we conclude that, as a general proposition, it is not so related.

A determinable characteristic is related to an individual's qualifications for employment where the characteristic prevents the individual from satisfactorily performing, at the standards set by the employer, the duties required by the particular job. *Carr v General Motors Corp*, 425 Mich 313, 322; 389 NW2d 686 (1986); *Bowerman v Malloy Lithographing, Inc*, 171 Mich App 110, 116; 430 NW2d 742 (1988).

Defendant argues that AIDS is related to an individual's ability to satisfactorily perform the duties of a waitress because AIDS is a communicable disease and the Code requires an employer operating a food ser-

vice establishment to exclude from that establishment an employee suspected of carrying any communicable disease, including AIDS. Defendant further argues that we may infer from the fact that the Code requires an employer to make such an exclusion that the Code authorizes a food service employer to suspend an employee suspected of carrying a communicable disease pending the results of medical testing that reveal the health status of the employee. We are persuaded that the Code contains no blanket prohibition against the continued employment of a food service employee suspected of having or confirmed to have AIDS.

Section 12909(1) of the Code, MCL 333.12909(1); MSA 14.15(12909)(1), provides:

> The department shall promulgate rules to prescribe criteria for programs by local health departments and procedures for the administration and enforcement of this part. The department may promulgate rules to prescribe minimum standards of sanitation for the protection of the public health and otherwise provide for the implementation of this part. The department in promulgating these rules shall seek the advice and counsel of local health departments and the food service industry.

Pursuant to § 12909(1), the Michigan Department of Public Health adopted and incorporated within its rules the provisions of the 1976 recommendations of the United States Public Health Service, found in the publication entitled "Food Service Sanitation Manual." 1981 AACS, R 325.25103(b). The parties agree that one of those provisions adopted is § 3-101, which provides as follows:

> No person, while infected with a disease in a communicable form that can be transmitted by foods or who is a car-

rier of organisms that can cause such a disease or while afflicted with a boil, an infected wound, or an acute respiratory infection, shall work in a food service establishment in any capacity in which there is a likelihood of such person contaminating food or food-contact surfaces with pathogenic organisms or transmitting disease to other persons.

Additionally, 1981 AACS, R 325.25909 provides in pertinent part:

(1) If the department or a local health department has reasonable cause to suspect possible disease transmission by an employee of a food service establishment, it may secure a morbidity history of the suspected employee and make any other investigation as may be deemed necessary.

(2) The department or a local health department may order an owner, operator, or person in charge of a food service establishment to do any of the following if a communicable disease is suspected or confirmed:

(a) Immediately exclude the employee from working in the food service establishment.

\*     \*     \*

(c) Restrict the employee's service to some area of the food service establishment, as approved by the department or the local health department, where there is no danger of transmitting disease.

(d) Require or provide for adequate medical or laboratory examination of the employee and other employees and of their body discharges.

(3) The owner, operator, or person in charge of a food service establishment shall exclude from the food service establishment any employee with a suspected communicable disease.

Our construction of these administrative rules is governed by the principles of statutory construction. *Attorney General v Lakes States Wood Preserving, Inc*, 199 Mich App 149, 155; 501 NW2d 213 (1993).

We concede, at the outset, Rule 325.25909(3) does contain language that, at first blush, would seem to support defendant's contention that the Code requires a food service employer to exclude from the food service establishment an employee suspected of being infected with any communicable disease. Nevertheless, we are persuaded that the broad sweep of this regulatory language must be moderated by the Code's intent as evidenced by § 3-101 and Rule 325.25909(2).

Section 3-101 and Rule 325.25909(1), (2), and (3) address the prevention of the spread of communicable diseases in food service establishments. Regulations that address the same subject or that share a common purpose are in pari materia and must be read together as one law. *Jennings v Southward*, 446 Mich 125, 136; 521 NW2d 230 (1994); *House Speaker*, 441 Mich 568. The object of the rule in pari materia is to give effect to the legislative purpose as found in harmonious statutes. *Jennings, supra*, 137. If statutes lend themselves to a construction that avoids conflict, then that construction should control. *State Treasurer v Schuster*, 215 Mich App 347, 352; 547 NW2d 332 (1996).

Section 3-101 clearly and unambiguously prohibits a person who is infected with a communicable disease in a form that can be transmitted through food, or who is a carrier of organisms that can cause a disease, such as from working in a food service establishment in any capacity in which there is a likelihood that the person will contaminate food or food-contact surfaces. Rule 325.25909(1) and (2) clearly and unambiguously authorize a health department, when faced with a suspected or confirmed presence of a communicable disease in a food service employee, to order a

food service employer to restrict that employee's service to some area in the food service establishment where there is no danger of disease transmission. The language employed in these regulatory provisions indicate that the Code was intended to enact measures to prevent the spread of communicable diseases transmissible through food, or, put another way, the Code seeks to prevent the spread of communicable diseases that are transmissible through the performance of specific food service jobs.

The broad exclusionary language employed in Rule 325.25909(3) conflicts with the more restrictive language employed in § 3-101 and Rule 325.25909(2) because Rule 325.25909(3) requires an employee to be excluded from a food service establishment regardless of whether the employee poses any health threat to others while § 3-101 and Rule 325.25909(2) allow the infected food service employee to remain in the employ of the food service establishment as long as the employee is infected with a communicable disease that is not transmissible through food or, if infected with a communicable disease transmissible through food, is restricted to an area of the establishment where there is no danger of transmitting the disease. This conflict can be eliminated if Rule 325.25909(3) is construed consistently with the Code's intent as evidenced by § 3-101 and Rule 325.25909(2), which is to exclude those food service employees with communicable diseases from those specific food service jobs that would allow the infected employees to transmit their diseases to others. So construed, Rule 325.25909(3) would authorize a food service employer to exclude a food service employee suspected of being infected with a communicable disease

only if the disease the employee is suspected of being infected with is transmissible through a job-related activity. Such a construction promotes the advancement of a single, harmonious intent and eliminates any tension between Rule 325.25909(3) and § 3-101 and Rule 325.25909(2). Because such a construction eliminates any conflict between the various regulatory provisions, we find this construction controlling. *State Treasurer*, 215 Mich App 352.

Additionally, such a construction is consistent with an informational publication the Michigan Department of Public Health distributes to the general public.[1] This publication, which was supplied to the trial court, indicates that because AIDS is not transmitted through casual contact, food, or water, a food service employee diagnosed with AIDS who is employed in a restaurant should be allowed to continue working as long as the employee is well enough to work and unless the work environment poses a risk of potential direct blood-to-blood contact with other individuals. To the extent that this informational publication reflects the Department of Public Health's interpretation of its own regulations, the interpretation is entitled to considerable weight and ought not be overruled absent cogent reasons. *Southfield Police Officers Ass'n v Southfield*, 433 Mich 168, 177; 445 NW2d 98 (1989).

We conclude, therefore, that the Code authorizes a health department, a food service employer, or both to take discriminatory action against an employee of a food service establishment only if that employee is

---

[1] Center for Health Promotion, Michigan Department of Public Health, *AIDS: 100 common questions & answers* (January 1987).

suspected of having, or is confirmed to have, a communicable disease in a form that may be transmitted through contact with food. In other words, the Code requires discriminatory treatment only where a food service employee is suspected of being, or confirmed to be, infected with a communicable disease that is transmissible through a job-related activity. In this regard, the Code parallels the HCRA because the HCRA prohibits an employer from discriminating against an employee only on the basis of a handicap that is unrelated to the employee's ability to perform the duties of a particular job. *Sanchez*, 440 Mich 502. To the extent that a food service employee has a communicable disease that is transmissible through contact with food or food-contact surfaces, that medical condition would be related to the specific requirements of any food service job that would place that employee in contact with food or food-contact surfaces. Therefore, any discriminatory action authorized under the Code that would be taken against an employee under such circumstances would fall outside the prohibitions of the HCRA.

Having concluded that the Code does not absolutely require the exclusion of a food service employee infected with a communicable disease from a food service establishment and that the Code authorizes discriminatory action only against a food service employee suspected of having, or confirmed to have, a communicable disease in a form that may be transmitted through food, the question then becomes whether AIDS is a communicable disease that is transmissible through contact with food.

While HIV infection and AIDS are both communicable diseases for purposes of the Code, MCL

333.5101(1)(b); MSA 14.15(5101)(1)(b), as amended by 1988 PA 491, neither is transmissible through contact with food. The documentary evidence the parties supplied to the trial court uniformly indicates that HIV infection and AIDS are not transmissible through routine or community contact, food-sharing, food preparation, food handling, or food or beverage service, but are transmitted from person to person through sexual contact, sharing HIV-contaminated intravenous needles and syringes, and transfusion of infected blood or its components.[2] In fact, the publications of the Centers for Disease Control, the Michigan Public Health Department, and the National Restaurant Association relied upon by the parties indicate that restricting the type of job duties a food service employee with AIDS may perform is unnecessary, given the limited modes of transmission of HIV, absent evidence of other infections or illnesses for which any food service worker should also be restricted.

Accordingly, we conclude that a suspicion of AIDS or a confirmed diagnosis of AIDS is insufficient, in and of itself, to authorize a food service employer to take discriminatory action under the Code against the employee suspected of having or confirmed to have

---

[2] Benenson, *Control of Communicable Diseases in Man*, "Acquired immunodeficiency Syndrome," (15th ed, 1990), ¶ 5, pp 3-4; Centers for Disease Control, Morbidity and Mortality Weekly Report, Vol 34, No 45, *Summary: Recommendations for Preventing Transmission of Infection with Human T-Lymphotropic Virus Type III/Lymphadenpathy-Associated Virus in the Workplace* (November 15, 1985), pp 681-683, 693-694; United States Public Health Service, United States Department of Health and Human Services, *Surgeon General's Report on Acquired Immune Deficiency Syndrome* (1986), pp 5, 12-13, 16, 19, 24-25; Center for Health Promotion, Michigan Department of Public Health, *AIDS: 100 common questions & answers* (January 1987), pp 2-4, 5, 6, 7, 17; National Restaurant Association, *Current Issues Report*, "The Facts About AIDS" (1985), pp 1, 2, 6, 8.

AIDS. Under such circumstances, we conclude that a severely compromised immune system associated with AIDS, in and of itself, is unrelated to an individual's ability to satisfactorily perform the duties of a waitress in a food service establishment within the meaning of the HCRA.

By this conclusion, we do not mean to exclude the possibility that under some circumstances a severely compromised immune system could constitute a characteristic related to an individual's ability to perform the duties of, or to qualify for employment as, a waitress. A diagnosis of AIDS is not a diagnosis of a single medical condition or illness. An AIDS diagnosis can be made where there is serological or cultural evidence of HIV infection and the presence of any of a number of specific opportunistic diseases.[3] Gordy-Gray, 2 Attorney's Textbook of Medicine, ¶ 46.31, p 46-28. In the absence of serological evidence of HIV infection, a diagnosis of AIDS can be made when an opportunistic infection[4] indicative of defective cellular immunity or Kaposi's sarcoma occurs in a person with no immunocompromising disease and who is receiving no immunocompromising therapy. 2 Attorney's Textbook of Medicine, pp 46-27—46-28. As the publications of the Center for Disease Control, the Michigan Public Health Department, and the National Restaurant

---

[3] These opportunistic diseases include disseminated histoplasmosis, isosporiasis causing diarrhea of more than one month, bronchial or pulmonary candidiasis, non-Hodgkin's lymphoma of high-grade pathological type and of B-cell or unknown phenotype, and Kaposi's sarcoma.

[4] These opportunisitic infections may be parasitic, fungal, bacterial, or viral and include pneumocystis carinii pneumonia, crytosporidiosis, round worm infestation, toxoplasmosis, Candida esophagitis, cryptococcal infection, Atypical mycobacteriosis, cytomegalovirus, herpes simplex virus, and progressive multifocal leukoencephalopathy. Gordy-Gray, 2 Attorney's Textbook of Medicine, ¶ 46.31, pp 46-27—46-28.

Association relied upon by the parties indicate, there is the potential for a person with a severely compromised immune system to harbor either an opportunistic infection in a communicable form that can be transmitted by contact with food or organisms that cause such a disease. To the extent that a food service employee with AIDS harbored such an opportunistic infection, or was suspected of harboring such an infection, a food service employer would be authorized to exclude the employee from a food service establishment under § 3-101 and Rule 325.25909(3). Where the food service employer would be authorized to take discriminatory action under the Code, the severely compromised immune system would constitute a characteristic related to an individual's qualification for employment and remove the characteristic from both the definition of handicap under the HCRA and the protection of the HCRA.

For the foregoing reasons, we hold that, with regard to a food service employee, a severely compromised immune system associated with AIDS is a determinable physical characteristic of an individual that may result from disease and that is unrelated to an individual's ability to perform the duties of a waitress or to an individual's qualification for such employment as long as this characteristic is not accompanied by an opportunistic infection in a communicable form that can be transmitted through contact with food. In other words, a food service employee with AIDS has a handicap within the meaning of the HCRA.

B

Having determined that a food service employee with AIDS can be handicapped within the meaning of

the HCRA, we now focus on defendant's claim that he, and not plaintiff, was entitled to summary disposition because plaintiff did not, and cannot, establish, as a matter of law, that defendant's action of suspending her constituted an unlawful discriminatory act under the HCRA. Applying the above principles to the present case, we are persuaded that the trial court correctly denied defendant's motion for summary disposition.

According to defendant's affidavit offered in support of his motion for summary disposition, defendant's action against plaintiff was motivated by his belief that plaintiff had AIDS. This belief, by itself, was insufficient to deny plaintiff the protection afforded under the HCRA. Instead, for defendant's actions to have been sanctioned by the Code and to have been outside the reach of the HCRA, defendant would have had to suspect or know that plaintiff had AIDS and harbored an associated opportunistic infection in a communicable form that was transmissible through contact with food. The instant record lacks any documentary evidence from which the trial court could conclude that defendant suspected that plaintiff was infected with an AIDS-related opportunistic infection that was transmissible through contact with food or that plaintiff exhibited any signs or symptoms of illness that might generate a suspicion that plaintiff harbored such an infection.

Having failed to present any such documentary evidence, defendant failed to establish that he was required under either § 3-101 or Rule 325.25909(3) to suspend plaintiff pending her presentation of proof of her health status. Consequently, he failed to established that his actions against plaintiff were motivated by a belief that plaintiff had a physical characteristic

that was related to her abilities to perform her duties as a waitress.

On the record before us, we conclude that defendant's suspension of plaintiff violated the HCRA because the suspension constituted an unlawful discriminatory act taken in response to a handicap that was unrelated to plaintiff's' abilities to perform her duties as a waitress. Accordingly, we reject defendant's claim that plaintiff did not establish, as a matter of law, a prima facie case of discrimination under the HCRA and his corresponding claim that he was entitled to summary disposition with regard to plaintiff's HCRA claim.

II

Defendant next argues that the trial court erroneously combined summary disposition and trial procedures when addressing the merits of the parties' summary disposition motions. We agree, but find the error harmless.

At the conclusion of the parties' arguments regarding the merits of defendant's motion for summary disposition brought pursuant to MCR 2.116(C)(10), the trial court determined that several genuine issues of material fact existed and that the existence of these factual issues provided sufficient grounds to deny defendant's motion. Nevertheless, the court took the motion under advisement and ordered an evidentiary hearing be held to supply the court with the evidence needed to resolve the factual issues. This latter action constitutes error. *Whitcraft v Wolfe*, 148 Mich App 40, 49; 384 NW2d 400 (1985).

Nevertheless, we find the error to have been harmless where the construction of the Code and the HCRA

presented the trial court with questions of law, where the parties presented sufficient documentary evidence to allow the court to determine whether a food service employee with AIDS possessed a handicap within the meaning of the HCRA, and where the record fails to establish that the court resolved a question of material fact.

III

Defendant also argues that the HCRA is void for vagueness. We disagree.

It is a basic principle of due process that a legislative enactment is void for vagueness if the enactment does not provide fair notice of the conduct proscribed. *Michigan State AFL-CIO v Civil Service Comm (After Remand)*, 208 Mich App 479, 492; 528 NW2d 811 (1995). To give fair notice of proscribed conduct, a statute must give a person of ordinary intelligence a reasonable opportunity to know what is prohibited. *People v Hicks*, 149 Mich App 737, 741; 386 NW2d 657 (1986). The statute cannot use terms that require persons of common intelligence to guess at the statute's meaning and differ regarding its application. *Allison v Southfield*, 172 Mich App 592, 596; 432 NW2d 369 (1988).

To the extent that defendant argues that the HCRA is unconstitutionally vague because it conflicts with the mandates of the Code, we reject defendant's argument. As we have already observed, the Code and the HCRA do not conflict and may be applied together in an harmonious manner.

We also reject defendant's argument that the HCRA is unconstitutionally vague because it provides no notice that persons with perceived handicaps are pro-

tected under the HCRA. This argument is premised on an unreasonable interpretation of the HCRA.

As our Supreme Court observed, the language of § 202(1)(b) expressly prohibits an employer from acting against an employee on the basis of a handicap within the statutory definition and, as such, the focus of the HCRA is on the employer's conduct and belief or intent, and not on the employee's condition. *Sanchez*, 440 Mich 502. To shift the focus of the HCRA to the employee's condition, as defendant does, not only would contradict the language employed in the HCRA, but also would result in an unreasonable and illogical application of the HCRA, as cogently explained by Judge REILLY in her concurrence in *Bay City Fire Dep't v Dep't of Civil Rights ex rel Roznowski*, 182 Mich App 145, 151-152; 451 NW2d 533 (1989):

> In accordance with [the HCRA's] remedial purpose, it would be incongruous to prohibit discriminatory conduct in one case, where the victim has an actual physical disability or mental deficiency which is unrelated to job performance, but allow the same type of conduct in another situation, where the victim does not have an actual disability or deficiency but where the employer mistakenly believes otherwise. For example, under the HCRA as interpreted by petitioner and the trial court, an employer would be prohibited from discriminating against a job applicant who is overweight, when weight is unrelated to job performance, but permitted to discriminate against another applicant for the same job who is not overweight, but is perceived to be by the employer. Such an interpretation is unreasonable because the applicant who was perceived to be overweight is equally as aggrieved by the discriminatory treatment as the person who was, in fact, overweight. Further, the result is illogical because the employer's conduct is equally objectionable in either case.

See also *Sanchez*, 440 Mich 502, n 16.

We conclude that the HCRA gives a person of ordinary intelligence a reasonable opportunity to know that discriminatory actions taken against an employee based on an employer's belief that the employee has a handicap unrelated to job performance are prohibited under the HCRA. Accordingly, the HCRA is not void for vagueness on the basis of inadequate notice.

IV

Lastly, defendant argues that the trial court abused its discretion in awarding plaintiff attorney fees. We disagree.

The decision whether to award attorney fees under the HCRA is within the trial court's discretion, *Yuhase v Macomb Co*, 176 Mich App 9, 15; 439 NW2d 267 (1989), and will be reviewed on appeal for an abuse of discretion, *Century Dodge, Inc v Chrysler Corp*, 154 Mich App 537, 544-545; 398 NW2d 1 (1986).

Defendant argues that the trial court abused its discretion in awarding plaintiff attorney fees because the award violated the condition imposed by the court for the grant of summary disposition in favor of plaintiff, which was plaintiff's acceptance of the same damage award that appeared in the February 22, 1989, order of dismissal. This argument is unsupported by the record. The record reflects that the order entered by the court on September 3, 1993, contained the same $491.25 damage award that appeared in the February 22, 1989, order. The record also reflects that plaintiff sought her award of attorney fees as an element of costs, and not as an element of damages. The trial court awarded the fees as an element of costs. Such an award was both within the court's authority, *Yuhase, supra* at 13-15, and consistent with the condi-

tion imposed by the court for the grant of summary disposition.

Defendant also argues that the trial court abused it discretion in awarding attorney fees because the affidavits submitted by plaintiff's counsel in support of their bill of costs failed to comply with MCR 2.625(G)(2). We disagree. Plaintiff need not have complied with MCR 2.625(G) to recover attorney fees because the fees were awarded pursuant to the HCRA. 3 Martin, Dean & Webster, Michigan Court Rules Practice (3d ed), 1995 pocket part, p 138; cf. *Young v Barker*, 158 Mich App 709, 726-727; 405 NW2d 395 (1987) (a trial court did not erroneously award attorney fees in a 42 USC 1988 civil rights action on an oral motion for those fees even though the party seeking the fees failed to submit a formal bill of costs as required by GCR 1963, 526.11, the predecessor of MCR 2.625[G]).

Defendant next argues that plaintiff waived her ability to seek fees for work performed after the February 22, 1989, order of dismissal was entered because plaintiff failed to file a bill of costs in a timely manner under MCR 7.219(B) and MCR 7.318. These court rules govern the taxation of costs incurred in the appellate courts. Accordingly, to the extent that defendant argues that plaintiff waived her ability to recover fees incurred as a result of the proceedings on remand to the circuit court, defendant has abandoned his claim by failing to cite supportive authority. *Mitcham v Detroit*, 355 Mich 182, 203; 94 NW2d 388 (1959).

Defendant is mistaken to the extent he argues that plaintiff's failure to file a bill of costs pursuant to either MCR 7.219(B) or MCR 7.318 resulted in her

waiver of the ability to receive attorney fees incurred as a result of appellate proceedings. These court rules govern the award of costs that may be taxed only by the appellate courts, *Bloemsma v Auto Club Ins Ass'n (After Remand)*, 190 Mich App 686, 692-693; 476 NW2d 487 (1991); 7 Martin, Dean & Webster, Michigan Court Rules Practice (2d ed), pp 347, 430, and, therefore, any failure to file a bill of costs would result in a waiver of those costs that are within the jurisdiction of the appellate court to award. *Bloemsma, supra* at 693; MCR 7.219(B); MCR 7.318(A). Such a failure would not result in a waiver of any costs within the jurisdiction of the trial court to tax, which would include an award of attorney fees incurred as a result of appellate proceedings. *Bloemsma, supra* at 690-691.

Defendant is also mistaken in his belief that attorney Mark Brewer failed to file an appearance in this action and, therefore, that plaintiff is not entitled to an award of fees that includes fees payable to Brewer. The record reflects that plaintiff filed numerous documents with the trial court that identified Brewer as one of her attorneys. These filings constituted an appearance by act as provided in MCR 2.117(B).

Defendant has abandoned his remaining challenges to the award of attorney fees by failing to cite supportive authority. *Mitcham, supra.*

Affirmed.