TRANKER v FIGGIE INTERNATIONAL, INC

Docket No. 188152. Submitted December 11, 1996, at Grand Rapids. Decided January 3, 1997, at 9:10 A.M. Leave to appeal sought.

Paul and Denise Tranker brought an action in the Van Bureau Circuit Court against Figgie International, Inc., alleging that the defendant violated the Michigan Handicappers' Civil Rights Act (HCRA), MCL 37.1101 *et seq.*; MSA 3.550(101) *et seq.*, and an employment contract with Paul Tranker when it terminated Tranker's employment. The court, William C. Buhl, J., granted summary disposition for the defendant, finding that the doctrine of judicial estoppel defeated the HCRA claim and that the defendant did not violate the employment contract. The plaintiffs appealed.

The Court of Appeals *held*:

1. The trial court did not err in applying the doctrine of judicial estoppel and finding that because Paul Tranker had successfully represented himself as being totally disabled to the Social Security Administration for purposes of receiving social security disability benefits, he could not be considered handicapped for purposes of his subsequent HCRA claim.

2. The trial court did not err in finding that the employment policy relied upon by the plaintiffs did not alter Paul Tranker's at-will employment to employment terminable for just cause only. The claim is essentially a duplication of the claim under the HCRA and is precluded for the same reason.

Affirmed.

1. ESTOPPEL — JUDICIAL ESTOPPEL — ADMINISTRATIVE LAW.

The doctrine of judicial estoppel is applied by the courts to estop a party who has successfully and unequivocally asserted a position in a prior administrative proceeding from asserting an inconsistent position in a subsequent proceeding.

2. CIVIL RIGHTS — HANDICAPPERS' CIVIL RIGHTS ACT — TOTAL DISABILITY — JUDICIAL ESTOPPEL.

The doctrine of judicial estoppel precludes a party alleging employment discrimination under the Handicappers' Civil Rights Act from alleging that the party has a physical or mental condition that is unrelated to the party's ability to perform the duties of a particular

job where the party has successfully represented to the Social Security Administration the inconsistent position that the party is totally and permanently disabled and unable to work and thus entitled to social security disability benefits (42 USC 423[d][1][A],[d][2]; MCL 37.1103[e][i][A], 37.1202[1][b]; MSA 3.550[103][e][i][A], 3.550[202][1][b]).

*Plaszczak & Bauhof, P.C.* (by *James F. Bauhof*), for the plaintiffs.

*Miller, Canfield, Paddock and Stone, P.L.C.* (by *Ronald E. Baylor* and *Scott R. Sikkenga*), for the defendant.

Before: Hood, P.J., and Neff and M. A. Chrzanowski*, JJ.

Per Curiam. Plaintiffs[1] filed this action against defendant, alleging that defendant violated Michigan's Handicappers' Civil Rights Act (hcra), MCL 37.1101 *et seq.*; MSA 3.550(101) *et seq.*, and an employment contract with plaintiff. The trial court granted defendant's motion for summary disposition, finding that the doctrine of judicial estoppel defeated plaintiff's hcra claim and that defendant's employment policy did not alter plaintiff's at-will employment. Plaintiffs appeal as of right. We affirm.

Plaintiff began working for defendant in 1970. In 1984, he was seriously injured in an automobile accident and was off work for six months. After the automobile accident plaintiff was, and he remains, physically compromised. He suffered a head injury, causing blindness in one eye, deafness in both ears requiring the use of a hearing aid, partial paralysis of his

---

* Circuit judge, sitting on the Court of Appeals by assignment.

[1] Denise Tranker's claims are derivative of those of her husband, Paul Tranker. Our use of "plaintiff" refers solely to Paul Tranker.

tongue causing a speech impediment, partial paralysis of his right hand, a ringing in his head, and a short-term memory deficit. Plaintiff also suffered a hip injury, requiring a hip replacement in 1991. When he returned to work following the accident, plaintiff resumed his former position, but after approximately eight to ten months, his position was changed to that of engineering liaison/expediter. This change in job responsibilities was made to accommodate plaintiff's physical limitations.

On January 9, 1991, plaintiff went on medical leave because of complications resulting from the 1984 automobile accident. Plaintiff underwent brain surgery in February 1991 and hip replacement surgery in August 1991, and was off work for approximately one year. Plaintiff returned to work on half-day status on February 3, 1992, with some physical restrictions. He was restricted from climbing ladders, squatting, and working on his hands and knees. Most of the duties of plaintiff's position as engineering liaison/expediter were no longer available because of their reassignment to other employees and a reduction in the work force. The new job description involved primarily maintenance responsibilities.

On February 14, 1992, approximately two weeks after plaintiff returned to work, he made a comment to his supervisor that his supervisor perceived as a threat. Plaintiff was informed the following day that he was suspended for threatening a supervisor. Through a letter dated March 24, 1992, defendant requested plaintiff to supply, by April 16, 1992, medical information demonstrating either an ability or an inability to work, or plaintiff's employment would be terminated effective that date. Plaintiff's counsel

responded by a letter, stating an uncertainty regarding the specific information needed, but some medical records were enclosed. On April 16, 1992, defendant sent a letter to plaintiff indicating that because he had not provided a medical explanation regarding his conduct on February 14, 1992, defendant was terminating plaintiff's employment, effective April 16, 1992.

On August 14, 1991, plaintiff had applied for social security disability benefits. On his application, he had indicated that he claimed total disability as of February 11, 1991. Plaintiff testified in his deposition that he received these benefits.

Defendant moved for summary disposition in the trial court, asserting that the doctrine of judicial estoppel should be applied to plaintiff's claim under the HCRA. It argued that because plaintiff successfully represented himself as being totally disabled to the Social Security Administration for purposes of receiving social security disability benefits, he could not be considered handicapped for purposes of the HCRA. The trial court agreed. It also held that the employment policy relied upon by plaintiff for purposes of his argument that defendant breached the parties' employment contract did not establish an employment contract terminable for just cause only.

We first address the trial court's application of the doctrine of judicial estoppel. Plaintiff claims that the trial court erred in applying this doctrine. We disagree.

Defendant's motion was brought pursuant to MCR 2.116(C)(8) and (C)(10). The trial court did not state under which subrule it granted defendant's motion. Because it referred to evidence outside the pleadings, we assume that summary disposition was granted

pursuant to MCR 2.116(C)(10). See MCR 2.116(G)(5). The trial court's disposition of a motion for summary disposition is reviewed de novo. *Sanchez v Lagoudakis (On Remand)*, 217 Mich App 535, 539; 552 NW2d 472 (1996). A motion for summary disposition pursuant to MCR 2.116(C)(10) tests the factual basis of a claim. *Ladd v Ford Consumer Finance Co, Inc*, 217 Mich App 119, 124; 550 NW2d 826 (1996). When we review a trial court's decision regarding a motion for summary disposition under MCR 2.116(C)(10), we consider all relevant affidavits, depositions, admissions, and other documentary evidence submitted by the parties, MCR 2.116(G)(5), in a light most favorable to the nonmoving party. *Quinto v Cross & Peters Co*, 451 Mich 358, 362; 547 NW2d 314 (1996). We must then determine whether there exists a genuine issue of material fact on which reasonable minds could differ or whether the moving party is entitled to judgment as a matter of law. *Id.*; *Sanchez, supra* at 539.

The HCRA provides that "[a]n employer shall not . . . [d]ischarge or otherwise discriminate against an individual with respect to compensation or the terms, conditions, or privileges of employment, because of a handicap that is unrelated to the individual's ability to perform the duties of a particular job or position." MCL 37.1202(1)(b); MSA 3.550(202)(1)(b). To establish a prima facie case of discrimination under the HCRA, a plaintiff must demonstrate that (1) he is handicapped as defined by the HCRA, (2) the handicap is unrelated to his ability to perform the duties of a particular job, and (3) that he was discriminated against in one of the ways described in the statute. *Sanchez, supra.*

"Handicap" is defined in the HCRA, MCL 37.1103(e); MSA 3.550(103)(e), as, in part:

(*i*) A determinable physical or mental characteristic of an individual, which may result from disease, injury, congenital condition of birth, or functional disorder, if the characteristic:

(A) . . . substantially limits 1 or more of the major life activities of that individual and is unrelated to the individual's ability to perform the duties of a particular job or position or substantially limits 1 or more of the major life activities of that individual and is unrelated to the individual's qualifications for employment or promotion.

For purposes of the Social Security Act, "disability" is defined as "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 USC 423(d)(1)(A). Furthermore, the act provides:

(A) An individual shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work. . . .

(B) In determining whether an individual's physical or mental impairment or impairments are of a sufficient medical severity that such impairment or impairments could be the basis of eligibility under this section, the Commissioner of Social Security shall consider the combined effect of all of the individual's impairments without regard to whether

any such impairment, if considered separately, would be of such severity. . . . [42 USC 423(d)(2).]

Plaintiff admits receiving social security disability benefits, and defendant provided the trial court with a copy of plaintiff's application for benefits.[2] The application, which is dated August 14, 1991, indicates that plaintiff became unable to work on February 11, 1991, because of his disabling condition and that he was still disabled when the application was completed. In his deposition, plaintiff stated that he continued to receive social security disability benefits. Thus, defendant argued, because plaintiff successfully represented that he was disabled, i.e., completely unable to work, the doctrine of judicial estoppel should be applied to preclude him from asserting the inconsistent position that he was handicapped, i.e., has a physical or mental condition that is unrelated to his ability to perform the duties of a particular job, for purposes of a discrimination suit under the HCRA. We agree.

The doctrine of judicial estoppel is applied by the courts to thwart the efforts of litigants who attempt to play "fast and loose" with the legal system. *Paschke v Retool Industries*, 445 Mich 502, 509; 519 NW2d 441 (1994), citing Bigelow, Estoppel (6th ed), p 783. Our Supreme Court has adopted the doctrine, as applied in the context of administrative proceedings, under the "prior success" model: " 'Under this doctrine, a party who has *successfully* and unequivocally asserted a position in a prior proceeding is estopped

---

[2] We note that although plaintiff admits that following an initial administrative hearing he received such benefits, he alerts this Court to the fact that evidence regarding the award of benefits was not presented below.

from asserting an inconsistent position in a subsequent proceeding.' " *Paschke, supra* at 509, quoting *Lichon v American Universal Ins Co*, 435 Mich 408, 416; 459 NW2d 288 (1990), citing *Edwards v Aetna Life Ins Co*, 690 F2d 595, 598 (CA 6, 1982).

The particular question before us is one of first impression. In *Paschke*, the question presented was whether, in order to secure unemployment benefits under the Employment Security Act, MCL 421.1 *et seq.*; MSA 17.501 *et seq.*, a representation before the Michigan Employment Security Commission (MESC) that one was willing and able to work could be used to preclude a subsequent claim of total disability under the Worker's Disability Compensation Act, MCL 418.101 *et seq.*; MSA 17.237(101) *et seq.* The Supreme Court concluded that because there was no explicit prohibition of receiving both total disability payments and unemployment benefits during the same period and nothing to indicate that under the statutes the claim that one is ready and able to work is inherently inconsistent with a subsequent total disability claim during the same period, the plaintiff's receipt of unemployment benefits did not preclude his claim for total disability payments. *Paschke, supra* at 513. The Supreme Court quoted Professor Larson:

"At first glance the two positions may appear mutually exclusive; but the inconsistency disappears when the special meaning of disability in workmen's compensation is remembered, involving, as we have seen, the possibility of some physical capacity for work which is thwarted by the inability to get a job for physical reasons. Thus, the injured claimant may honestly represent to the Employment Security office that he is able to do some work, and with equal honesty tell the Compensation Board later that he was totally disabled during the same period since, although he

could have done some kinds of work, no one would give him a job because of his physical handicaps." [*Paschke, supra* at 513-514, quoting 1C Larson, Workmen's Compensation, § 57.65, p 10-492.50.]

The conclusion of the *Paschke* Court regarding the relationship between unemployment compensation and disability benefits can be distinguished from the situation now before us. To receive social security disability benefits, plaintiff certified that he was "not only unable to do his previous work but [could not] engage in any other kind of substantial gainful work . . . ." To maintain a claim under the HCRA, plaintiff was required to demonstrate that his physical or mental characteristics were "unrelated to [his] ability to perform the duties of a particular job or position . . . ." These two positions cannot be reconciled as those in *Paschke* could. As stated in *Paschke*:

> In a wage-loss system, in which disability is phrased in terms of a limitation of the worker's earning capacity, rather than the degree of physical impairment, physical disability is only one factor of the equation. The fact that the MESC may have adjudged plaintiff able and available to perform some work for which he was qualified by training and experience simply does not foreclose the possibility that, during that same period and thereafter, plaintiff actually suffered a limitation of his earning capacity, even one rising to the level of total disability. [*Id.* at 515, n 11; citations omitted.]

Here, however, the receipt of social security disability benefits and a successful claim under the HCRA would require inconsistent findings regarding the claimant's physical impairment and ability to perform. A claimant simply may not, on the one hand, be completely unable to engage in gainful work, yet at the same

time be physically or mentally limited in a way unrelated to the claimant's ability to perform job duties.

We find persuasive the reasoning of the Third Circuit Court of Appeals in *McNemar v Disney Store, Inc*, 91 F3d 610 (CA 3, 1996). The issue there was quite similar to the instant one. The plaintiff in *McNemar* was employed by the defendant. After he learned of his status as HIV-positive, he took $2 from his cash register without documenting or repaying it. At a loss-prevention interview, the plaintiff admitted his actions, and he was immediately suspended. When he was told by his superior and the loss-prevention supervisor that they would call headquarters to determine whether the plaintiff would be discharged, the plaintiff broke down and told them that he was HIV-positive. The plaintiff was ultimately discharged according to the company's policy regarding using store money for personal use. *Id.* at 613-615.

After his discharge from his position with the Disney Store, the plaintiff sought and received state disability benefits, social security disability benefits, and an exemption from repayment of an educational loan. To obtain these benefits, the plaintiff and his physicians certified that he had been totally and permanently disabled from approximately five weeks before his discharge. *Id.* at 615. The plaintiff later filed a complaint against the defendant alleging a violation of the Americans with Disabilities Act (ADA) 42 USC 12101 *et seq.*, § 510 of the Employee Retirement Income Security Act, 29 USC 1140, and the New Jersey Law Against Discrimination, NJ Stat Ann 10:5-4.1. The Third Circuit Court of Appeals agreed with the district court's application of judicial estoppel and concluded that the plaintiff's representation to the

Social Security Administration that he was totally and permanently disabled was clearly inconsistent with his position under the ADA, 42 USC 12111(8), 12112(a), that he was "a qualified person with a disability who, with or without reasonable accommodation, can perform the essential functions of the job." *McNemar, supra* at 618.

We conclude that plaintiff's representation to the Social Security Administration that he was totally and permanently disabled precludes his claim under the HCRA. The trial court did not err in granting defendant's motion for summary disposition.[3]

Next, plaintiff argues that the trial court erred in granting defendant summary disposition of plaintiff's claim that defendant breached the parties' employment contract by discriminating against plaintiff, an activity prohibited by defendant's employment policy no. 105, which addresses equal employment opportunity and affirmative action. The trial court granted defendant's motion on the basis that the policy relied upon by plaintiff did not alter plaintiff's at-will employment. We find no error in the trial court's decision.

Generally, a contract of employment for an indefinite term is presumed to be terminable at will. *Rood v General Dynamics Corp*, 444 Mich 107, 116; 507 NW2d 591 (1993). To overcome the presumption of at-will employment, a party must present evidence of a contract provision for a definite term of employment

---

[3] Although it is neither raised nor necessary to our decision, we also note that plaintiff was not handicapped within the meaning of the hcra in that his injuries are related to his ability to perform his job. *Marsh v Dep't of Civil Service (After Remand)*, 173 Mich App 72, 80; 433 NW2d 820 (1988).

or one prohibiting discharge absent just cause. *Id.* at 117. These provisions may be either explicit promises or promises implied in fact. *Id.* Moreover, "employer policies and procedures may also become a legally enforceable part of an employment relationship *if* such policies and procedures instill 'legitimate expectations' of job security in employees." *Id.* at 117-118, quoting *Toussaint v Blue Cross & Blue Shield of Michigan,* 408 Mich 579, 615; 292 NW2d 880 (1980).

Plaintiff claims that defendant's policy regarding equal employment opportunity and affirmative action created an employment provision prohibiting plaintiff's being discharged on the basis of his physical or mental handicap. The policy stated that it was defendant's policy "to afford equal employment and advancement opportunity for all qualified individuals without distinction or discrimination because of . . . physical or mental handicap . . . ." Plaintiff's claim arising from this policy is essentially a duplication of his claim under the HCRA. We conclude that for the same reasons for our decision above, plaintiff's claim based on breach of an employment contract is precluded.

Affirmed.