705 So.2d 782 (1997)
John FOSTER, Virginia Foster and Robert Hallford
v.
Carolyn TINNEA and State Farm Fire and Casualty Company.
No. CA 96 2718.
Court of Appeal of Louisiana, First Circuit.
December 29, 1997.
*783 Michael Connelly, Baton Rouge, for Plaintiffs/Appellants John and Virginia Foster and Robert Hallford.
William Justice and Mary Cazes, Baton Rouge, for Defendants/Appellees State Farm Fire and Casualty Company and Carolyn Tinnea.
Before FOIL, WHIPPLE and KUHN, JJ.
WHIPPLE, Judge.
This case is before us on appeal by plaintiff, Robert Hallford, from a judgment in favor of defendants, Carolyn Tinnea and State Farm Fire and Casualty Company (State Farm), granting involuntary dismissal, with prejudice, of a petition for injunctive relief and damages filed on behalf of Hallford and the other plaintiffs, John and Virginia Foster. For the reasons which follow, we affirm.

FACTS AND PROCEDURAL HISTORY
Robert Hallford, son of Virginia Foster and stepson of John Foster, was injured in an accident in 1986 which left him brain damaged and unable to live on his own. Thus, at age twenty-seven, he still resided with John and Virginia Foster, together with several of his siblings, and some of their children. In 1988, the Fosters moved into the Jefferson Arms apartment complex, after informing Mrs. Carolyn Tinnea, the apartment manager, that Hallford would be living with them and that he had suffered brain damage in an accident several years earlier.
The Fosters continued to live at the Jefferson Arms apartments, periodically renewing their lease. They planned to renew a lease which was to expire on October 31, 1991; however, on October 17, 1991, Mrs. Tinnea informed the family by letter that their lease would not be renewed if Hallford continued to live with them. On October 23, 1991, Mr. and Mrs. Foster and Hallford sent a letter to Mrs. Tinnea informing her of their view that refusing to renew the lease was a violation of LSA-R.S. 46:2251-2256, Louisiana's Civil Rights for Handicapped Persons Act. The letter also recited that Mrs. Tinnea was being given thirty days to settle the dispute before the Fosters filed suit. Thereafter, on October 30, 1991, Mrs. Tinnea sent the Fosters another letter, informing them that they were to vacate the rental unit by the end of November.
In response, Hallford and the Fosters filed a petition for injunction on November 4, 1991, seeking to have the Fosters' lease renewed for another year. On November 15, 1991, the plaintiffs amended their petition to additionally allege a violation of 42 U.S.C. § 3604[1] and seek damages under 42 U.S.C. *784 § 3613.[2] Plaintiffs also subsequently vacated the apartment.
On November 22, 1991, State Farm answered, generally denying plaintiffs' claims, and asserting as an affirmative defense that Hallford is mentally and emotionally handicapped and, therefore, "poses a physical hazard" to the other tenants at Jefferson Arms Apartments. Mrs. Tinnea also filed an answer, alleging that Hallford's actions have endangered the safety of other lessees, and that his crude, rude, sexual comments threatened and scared Mrs. Tinnea as well as other tenants. She also alleged that she was under no obligation to renew the lease, and that allowing Hallford to continue to live at Jefferson Arms posed a threat to the physical safety of the other tenants, based on past incidents set forth in detail in her answer.
After the plaintiffs' presentation of evidence at the November 2, 1993 trial, defendants moved for an involuntary dismissal of plaintiffs' claims, in accordance with LSA C.C.P. art. 1672(B). The trial court granted the motion, dismissing plaintiffs' suit with prejudice, by judgment signed November 22, 1993.
Plaintiffs timely filed a motion for appeal. On April 4, 1994, plaintiffs sought leave of court to proceed in forma pauperis. The trial court denied the Fosters' motion but granted Hallford's, allowing him to go forward with his appeal without payment of costs. On October 4, 1994, defendants filed a motion to dismiss plaintiffs' appeal for failure to pay estimated costs. The Fosters' appeal was dismissed with prejudice at their costs, but Hallford's right to appeal was reserved. Therefore, only Hallford's appeal is before us.

DISCUSSION

Involuntary Dismissal
Louisiana Code of Civil Procedure article 1672(B) provides that in an action tried by the court without a jury, any party, without waiving his right to offer evidence in the event the motion is not granted, may move for involuntary dismissal at the close of plaintiffs' case on the ground that upon the facts and law, plaintiff has shown no right to relief. In deciding whether to grant a motion for involuntary dismissal, the trial court's standard is "whether the plaintiff has presented sufficient evidence in [his] case-in-chief to establish a claim by a preponderance of the evidence." Proof by a preponderance of the evidence simply means that "taking the evidence as a whole, the fact or cause sought to be proved is more probable than not." Politz v. Recreation and Park Commission for the Parish of East Baton Rouge, 619 So.2d 1089, 1093 (La.App. 1st Cir.1993). On review, once the trial court has made a ruling on such a motion, the appellate court may reverse that ruling only upon a finding of manifest error, which has been defined as a finding of fact not reasonably supported by credible evidence in the record. Politz, 619 So.2d at 1093, 1095. A plaintiff is entitled to no special inferences in his favor; however, "uncontroverted testimony should be taken *785 as true to establish a fact for which it is offered absent circumstances in the record casting suspicion on the reliability of the testimony and a sound reason for its rejection." Politz, 619 So.2d at 1095. "The issue to be resolved by a reviewing court is not whether the trier of fact was right or wrong, but whether the factfinder's conclusion was a reasonable one." Turner v. City of Monroe, 25,554, p. 7 (La.App. 2nd Cir. 3/30/94), 634 So.2d 981, 985. Therefore, this court must determine whether the trial court erred in concluding that under the facts and law, Hallford failed to show, by a preponderance of the evidence, any right to relief under either Louisiana or federal law.

State and Federal Discrimination Claims
Hallford alleges that appellees violated both Louisiana's Civil Rights for Handicapped Persons Act and the federal Fair Housing Act. The parties do not dispute that Hallford is a handicapped person as contemplated by the two acts. Under both the state and federal acts, a "handicapped person" is one who has: (1) a physical or mental impairment which substantially limits one or more of such person's major life activities, (2) a record of such an impairment, or (3) is regarded as having such an impairment. 42 U.S.C. § 3602(h)(1)-(3); LSA-R.S. 46:2253(1).[3] It is undisputed that Hallford has a mental impairment which prevents him from living alone and holding a full time job, and he has been in this condition since his accident in 1987.[4] While the record does not contain a formal stipulation, the parties concede that Hallford is a handicapped person within the meaning of the acts.[5]
Hallford alleges that he is an "[o]therwise qualified person" and that defendants violated LSA-R.S. 46:2254(A) and (G) by discriminating against him on the basis of his handicap by refusing to renew the Fosters' lease. Louisiana Revised Statute 46:2254(A) provides, in pertinent part, that "No otherwise qualified person shall, on the basis of a handicap, be subjected to discrimination ... in any real estate transaction." Louisiana Revised Statute 46:2254(G) specifically provides that "[a]n owner or any other person engaging in a real estate transaction, ... shall not, in accordance with R.S. 46:2254(A) ... [refuse to engage in a real estate transaction] on the basis of a handicap that is unrelated to ... an otherwise qualified individual's ability to acquire, rent, or maintain property." Pursuant to LSA-R.S. 46:2253(15), "real estate transactions" include lease agreements.
After carefully reviewing the record herein, we find no error in the trial court's factual findings or its conclusion that Hallford failed to make even a prima facie showing that he was an individual "otherwise qualified" and "entitled to services," who was discriminated against on the basis of his handicap. We find, as did the trial court, that Hallford failed to establish any discriminatory intent and failed to establish his discrimination claim by a preponderance of the evidence.
The record shows Hallford repeatedly made inappropriate sexual comments to female tenants, used extreme profanity, and repeatedly played loud vulgar music on the premises. Although he was advised by his doctors to refrain from drinking alcoholic beverages, and forbidden to do so by his parents, he nonetheless continued to drink alcohol, which worsened his admittedly bad temper. Hallford's family admitted that although *786 he had been seeing a social worker who put him on medication which improved his behavior, he discontinued his visits with the social worker, as well as the prescribed medication. The record shows he was involved in several altercations with other tenants, including physical fights on the premises. In one incident, he chased small children with a machete and threw a tire tool into a group of children playing on the complex playground.
Considering the testimony in the record herein, we find no error in the trial court's conclusion that Hallford was denied housing solely because he presented a danger to the tenants of Jefferson Arms Apartments. We agree with the trial court's underlying finding that he cannot be considered an "otherwise qualified person" and that he failed to establish any discriminatory intent or intent to discriminate on the basis of his handicap.
In Kelly v. Boeing Petroleum Services, Inc., 61 F.3d 350 (5 Cir.1995), the Fifth Circuit interpreted the Louisiana Handicapped Act in an employment situation and found that the phrase "on the basis of a handicap" in LSA-R.S. 46:2254(C)(1) and (2) requires a showing of intentional discrimination on the part of the employer. Similarly, LSA-R.S. 46:2254(G) requires a showing of intentional discrimination on the part of defendants in refusing to renew the lease, which Hallford failed to establish herein.
The record shows Hallford had lived at Jefferson Arms for several years prior to defendant's ultimate refusal to renew the lease in 1991. Throughout this time, defendant clearly was aware of Hallford's handicap and nonetheless had previously renewed the Fosters' lease. Thus, applying the court's reasoning in Kelly, and considering the testimony presented herein, we find nothing in the Act's stated purpose that supports the existence of a cause of action in handicap-based discrimination. Here, Hallford failed to prove that the lease was rejected because of his handicap. Instead, the testimony shows that defendants refused to renew the lease solely because of the threat he posed to the other tenants of the complex.
We likewise conclude Hallford failed to establish a right to relief under any federal cause of action. 42 U.S.C. § 3604(f)(1) prohibits discrimination in the sale or rental of a dwelling to any buyer or renter because of a handicap of that buyer or renter, or a person residing in or intending to reside in that dwelling after it is so sold, rented, or made available. However, pursuant to 42 U.S.C. § 3604(f)(9), "[n]othing in this subsection requires that a dwelling be made available to an individual whose tenancy would constitute a direct threat to the health or safety of other individuals or whose tenancy would result in substantial physical damage to the property of others." Detailed testimony was elicited during the presentation of plaintiff's evidence documenting Hallford's obscenities, fights, and treatment of young children in the complex and the serious threat he poses to other Jefferson Arms tenants.
Further, the testimony shows that "no `reasonable accommodation' will eliminate or acceptably minimize the risk [plaintiff] poses to other residents," further justifying defendants' actions and the trial court's ruling herein. See Roe v. Sugar River Mills Associates, 820 F.Supp. 636, 640 (D.N.H.1993).[6] Here, defendants gave Hallford and the Fosters multiple opportunities for Hallford to reform his conduct and discontinue his offensive behavior. On several prior occasions, defendants renewed the Fosters' lease. Further, Mrs. Carolyn Tinnea repeatedly discussed with Mrs. Foster the problems Hallford was creating at Jefferson Arms before taking the drastic action of refusing to renew the lease.
When examining a claim under 42 U.S.C. § 3604(f)(1), courts use the discriminatory intent and discriminatory effect tests. Discriminatory impact cases generally involve *787 facially neutral policies or laws that have a significant statistical effect of disfavoring members of a protected class. Michigan Protection and Advocacy Service, Inc. v. Babin, 799 F.Supp. 695, 706 (E.D.Mich.1992). Here, however, there is no policy or law at issue. Rather, Hallford complains about a single allegedly discriminatory transaction. Thus, the scope of this case is too narrow to qualify as one involving a discriminatory impact. Even reviewing plaintiff's § 3604(f)(1) claim as a "discriminatory intent claim," we find no manifest error in the trial court's finding that there was no showing of discriminatory intent. Instead, the record amply supports the trial court's determination that plaintiff failed to establish by a preponderance of the evidence even a prima facie showing that defendants violated any state or federal law in refusing to renew the lease. Thus, the trial court properly granted the motion for involuntary dismissal at the close of plaintiff's case.

CONCLUSION
Accordingly, we affirm the judgment of the trial court granting defendants/appellees' motion for involuntary dismissal of Hallford's claims, with prejudice. Although the matter was brought in forma pauperis, costs are hereby assessed against appellant, Robert Hallford. See Gibson v. Barnes, 597 So.2d 176, 178 (La.App. 1st Cir.1992).
AFFIRMED.
NOTES
[1] 42 U.S.C. § 3604 addresses discrimination in the sale or rental of housing and other prohibited practices and provides, in pertinent part:

As made applicable by section 3603 of this title and except as exempted by sections 3603(b) and 3607 of this title, it shall be unlawful
* * * * * *
(f)(1) To discriminate in the sale or rental, or to otherwise make unavailable or deny, a dwelling to any buyer or renter because of a handicap of
(A) that buyer or renter,
(B) a person residing in or intending to reside in that dwelling after it is so sold, rented, or made available; or
(C) any person associated with that buyer or renter.
[2] 42 U.S.C. § 3613 addresses remedies for enforcement by private persons and provides, in part, a right of relief, as follows:

(c)(1) In a civil action under subsection (a) of this section, if the court finds that a discriminatory housing practice has occurred or is about to occur, the court may award to the plaintiff actual and punitive damages, and subject to subsection (d) of this section, may grant as relief, as the court deems appropriate, any permanent or temporary injunction, temporary restraining order, or other order (including an order enjoining the defendant from engaging in such practice or ordering such affirmative action as may be appropriate).
(2) In a civil action under subsection (a) of this section, the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee and costs. The United States shall be liable for such fees and costs to the same extent as a private person.
[3] LSA-R.S. 46:2253(1) essentially recites the federal language and provides: "`Handicapped person' means any person who has an impairment which substantially limits one or more life activities or (a) has a record of such an impairment or (b) is regarded as having such an impairment."
[4] Pursuant to LSA-R.S. 46:2253(2) "`Impairment' means ... retardation; any physical or physiological disorder or condition, or prior mental disorder or condition...." Also, as per LSA-R.S. 46:2253(3), "`Major life activities' mean functions such as caring for one's self, ... and working."
[5] We note that in Turner, the Second Circuit considered the res nova issue of whether the protection of the act extends even in the absence of an actual handicap. After considering other federal and state anti-discrimination statutes, the Turner court held that an employee who proves that an employer discriminates against him based on a perceived or believed handicap, even one which does not actually exist, nonetheless had proven prima facie a violation of Louisiana's Handicapped Act.
[6] In Roe, plaintiff, a mentally handicapped tenant in a federally subsidized housing complex, was evicted for threatening a fellow tenant with physical violence and obscene and offensive language. On a motion for summary judgment, defendants invoked the Sec. 3604(f)(9) exemption to the Fair Housing Act, citing the Act's legislative history. However, the plaintiff successfully argued that before defendants could invoke the exemption, they were required to first attempt to make reasonable accommodations for plaintiff. Roe, 820 F.Supp. at 640.